HOUSTON LIGHTING & POWER COMPANY, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74922.    Promulgated July 3, 1936.

*Claude M. Houchins, Esq.*, for the petititoner.
*Harold Allen, Esq.*, and *R. H. Transue, Esq.*, for the respondent.
*George W. Billings, Esq.*, for the city of Houston, Texas, as *amicus
curiae.*

OPINION.

ARNOLD: The question presented in this case is whether certain amounts of petitioner's net earnings in the taxable years which were subsequently paid over to the city of Houston, under the circumstances set out in our findings of fact above, are taxable to petitioner.

During the taxable years petitioner operated its public utility properties under a contract evidenced by an ordinance adopted by the city of Houston in 1915 and duly accepted by petitioner, which provided that all net earnings of petitioner in excess of operating expenses, Federal and state taxes, depreciation, and other items, and an agreed reasonable return on its investment, should be divided equally between the city and petitioner. Pursuant to such contract petitioner paid to the city of Houston for the respective taxable years certain amounts representing one-half of its excess net earnings, computed by deducting the Federal income tax on its one-half of such excess earnings. In its income tax returns petitioner deducted from gross income, in computing taxable net income, the amount paid to the city for each year. Upon audit of the returns. respondent determined that the sums paid by the petitioner to the city of Houston constituted taxable income to petitioner, and are not allowable deductions from gross income.

In support of his action respondent argues on brief that the alleged contract was *ultra vires* on the part of the city of Houston, and, not being a legally enforceable agreement, the amounts paid by petitioner to the city were merely gratuities, which are taxable to petitioner in the same manner and to the same extent as any other ordinary income, and for the same reasons do not constitute allowable deductions from gross income.

It is suggested by the *amicus curiae* that the validity of the contract between petitioner and the city can not be attacked by respondent in this proceeding. As a general rule, a private party, a stranger to a transaction, can not question the want of power in, or its abuse by, a corporate party thereto. 14A Corpus Juris, 337. A contract unenforceable for want of mutuality can not be attacked by a stranger. *Underwood* v. *Texas & Pacific Railway Co.*, 178 S. W. 38. In any event, to entitle a party to raise the question of *ultra vires* it must appear that some right of his has been invaded by the act of which he complains. 14A Corpus Juris 337, and cases there cited.

It is to be observed that the contract under consideration, in so far as concerns the taxable years before us, has been fully performed without complaint by the parties, and it is the settled rule of law that the validity of an executed contract, not *malum in se*, can not thereafter be questioned. *Storm* v. *United States*, 94 U. S. 76; *Chicago, etc. R. Co.* v. *United States*, 218 Fed. 288; affd., 244 U. S. 351.

Not only has the contract here been performed by the parties, neither of which has questioned its legal sufficiency, but it does not appear that any right of the respondent has been invaded by the asserted lack of power on the part of the city of Houston. If the *bona fides* of the transaction were assailed and it was shown that respondent's rights depended upon the question of validity of the contract, as in the case of a fictitious contract of purchase and sale designed to establish a loss for income tax purposes not in fact sustained, a different situation would be presented. But respondent makes no such contention here, and, as we view the matter, for the reasons hereinbelow indicated, the right of respondent to assess and collect the deficiencies in controversy is not dependent upon whether the contract was or was not legally enforcable as between petitioner and the city of Houston.

It does not follow, however, that respondent's action in determining the deficiencies must be disapproved merely because it is predicated upon erroneous grounds, if it otherwise appears to be correct. We must then examine the entire record before us to determine whether the deficiencies asserted are legally due from the petitioner. Cf. *American Bond & Mortgage Co.*, 15 B. T. A. 264; *John I. Chipley*, 25 B. T. A. 1103, 1106, and authorities cited.

In its brief petitioner urges that the portion of its excess net earnings paid over to the city of Houston under the terms of the contract was never at any time income to it; that the amounts so paid accrued to the city and, therefore, are not taxable to petitioner. In the alternative petitioner says that, if such amounts constituted income to it, then the amounts should be allowed as deductions from

its gross income. Petitioner assigns no reason and cites no authority in support of its alternative contention.

The statutes which govern this proceeding are the Revenue Acts of 1926 and 1928. Section 213 (b) (7) of the 1926 Act, which is identical with section 116 (d) of the 1928 Act, provides as follows:

(b) The term "gross income" does not include the following items, which shall be exempt from tax under this title:

*      *      *      *      *      *      *

(7) * * *.

Whenever any State * * * or any political subdivision of a State * * * prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility—

(A) If by the terms of such contract the tax imposed by this title is to be paid out of the proceeds from the operation of such public utility, prior to any division of such proceeds between the person and the State * * * [or political subdivision] and if, but for the imposition of the tax imposed by this title, a part of such proceeds for the taxable year would accrue directly to or for the use of such State * * * [or political subdivision] then a tax upon the net income from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rate prescribed in this title, but there shall be refunded to such State * * * [or political subdivision] an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this title) would have accrued directly to or for the use of such State * * * [or political subdivision] bears to the amount of the net income from the operation of such public utility for such taxable year.

Petitioner's contention, that the quoted statute is not applicable here on the theory that the contract between petitioner and the city pertained only to regulation and hence not to one of the objects stated in the statute, we think, is not sound. The object and purpose of the contract was not only to regulate rates or fix the amount of the net income which petitioner would be entitled to earn, but it also looked to the continued operation and maintenance of the public utility as well. This is further borne out by the fact that the ordinance of May 17, 1915, provided for representation of the city by two members on petitioner's board of directors.

It will be noted that for this case to come within the purview of the statute, the following facts must appear: (1) That the city of Houston, which is a political subdivision of the State of Texas, entered in good faith into a contract prior to September 8, 1916, with petitioner, the object of which was to acquire, construct, operate or maintain a public utility, and (2) that the Federal income tax, under the terms of the contract, was to be paid out of the proceeds from the operation of the public utility prior to any division of such proceeds between petitioner and the city. These factual elements are all present in the instant case.

It is also important to note that the statute does not treat that part of the proceeds which accrued to the city under the contract as income of the petitioner. On the contrary, it manifestly treats the city's portion of the proceeds from operation as income of the city, but, since by the terms of the contract the tax was to be paid out of the proceeds from operation prior to any division of the proceeds between petitioner and the city, the statute imposes upon petitioner, as custodian of the fund prior to division, the obligation to pay the full amount of tax thereon, and then provides for the refund of a proportionate part to the city. If this had been done, as required by the statute, one-half of the total tax would have come out of that part of the operating revenue which accrued to petitioner and one-half out of the city's portion, since the entire amount would have been deducted from the excess revenue before division. Thus, in substance and effect, the burden ultimately borne by petitioner would have been only the tax computed upon the net income which accrued to and was actually received by it.

However, petitioner did not follow the plain requirements of the statute. It paid the tax only upon its portion of the operating net income, and deducted the amount of such tax from the total net proceeds of operation prior to paying over to the city its share. The effect of this was to increase petitioner's income by one-half of the tax not paid on the city's share, or to give it the benefit of a deduction to the extent of one-half the tax not paid on the city's share, and correspondingly to diminish the city's share of the net operating income; a result which the statute was particularly designed to prevent.

The conclusions reached above are supported by the legislative history of this statute. The provisions quoted hereinabove first appeared in their present form in section 213 (b) (7) of the Revenue Act of 1924. The corresponding provision of the 1921 Act reads as follows:

Sec. 213. That for the purpose of this title * * * the term "gross income"—

\* \* \* \* \* \* \*

(b) Does not include the following items, which shall be exempt from taxation under this title;

\* \* \* \* \* \* \*

(7) * * * Whenever any State * * * or political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility, no tax shall be levied under the provisions of this title upon the income derived from the operation of such public utility, so far as the payment thereof will impose a loss or burden upon such State * * * or political subdivision; but this provision is not intended and shall not be construed to confer upon such person any financial

gain or exemption or to relieve such person from the payment of a tax as provided for in this title upon the part or portion of such income to which such person is entitled under such contract.

Provisions similar to those just quoted from the Revenue Act of 1921 appeared also in the Acts of 1913, 1916, and 1918. Under those acts, where the operator of a public utility paid the tax upon its portion of the net income by deducting the amount of such tax in computing the portion payable to the city, as was done by petitioner in the case at bar, a portion of the burden of taxation fell upon the city and to that extent the operator derived a financial gain to the defeat of the plainly expressed intention of the statute. This situation led to the changing of the provisions of the statute as embodied in the 1924 Act, *supra*, so that thereafter instead of no tax being levied upon the city's portion of the income, as under the earlier acts, a tax was levied which the operator was required to pay not only upon the net income which accrued to the operator, but also upon the city's portion. This is made clear, we think, by the report of the Senate Finance Committee on the Revenue Bill of 1924, which reads as follows:

The existing law provides in section 213 (b) (7) that whenever a State [or political subdivision] prior to September 8, 1916, has entered into a contract with any person to acquire, construct, operate, or maintain a public utility, the portion of the income to which such person is entitled shall be taxed but no tax shall be imposed upon the income derived by the State [or political subdivision] in such a manner as to impose a loss or burden upon the State, Territory, or political subdivision. In order that this exemption may more readily be administered, the paragraph has been reworded to provide that the tax upon the income from the operation of the utility shall be levied as provided in this title, but there shall be refunded to the State, Territory, or political subdivision thereof * * * a part of the tax equal to the amount by which the share of the income accruing to the State, Territory, or political subdivision thereof * * * was reduced in the imposition of the tax.

The clear intendment of Congress as expressed both in the 1921 and prior acts and in 1924 and subsequent acts, was to tax to the operator of a public utility, under the conditions specified, only the income accruing to and derived by such person, and it was merely the method of levying, assessing and collecting the tax which was changed by the 1924 enactment. That change was made for the purpose of insuring relief to the state or political subdivision from any burden of taxation, and likewise to insure that the person operating the public utility would not receive any benefit of exemption from tax in that connection.

Petitioner can not successfully argue, and as we understand does not in fact contend, that it should not bear the burden of the tax upon the income accruing to and actually received by it. This it has not yet done in respect of the years before us. On the other

hand, if petitioner be now required to pay the deficiencies asserted by respondent, it is plain, of course, that it will then have paid more than the amount of tax due on its own income, but this result flows from the failure of petitioner to pay the tax, as required of it by the statute, at the time of filing its returns, and it has no legal cause of complaint against the Government. Its remedy lies in making proper adjustment of its accounts with the city. If and when the requirements of the statute have been fully complied with, and when proper adjustments have been made between the petitioner and the city in accordance with the terms of their contract, the net result will be that petitioner will have borne only the tax due upon its own income, and the city will have had refunded to it the tax assessed against and paid out of its funds by petitioner. We must, therefore, approve the deficiencies determined by respondent.

Reviewed by the Board.

*Judgment will be entered for the respondent.*