## MELTZER et ux. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 168.

Circuit Court of Appeals, Second Circuit.

April 15, 1946.

L. HAND, Circuit Judge, dissenting.

———◆———

Harry J. Stein, of New York City, for petitioners.

S. Dee Hanson, Acting Asst. Atty. Gen. (Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty Gen., on the brief), for respondent.

Before L. HAND, SWAN and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Tax Court. Petitioners Joseph Meltzer[1] and Bertha Meltzer, husband and wife, filed a joint tax return for 1941, in which they claimed a deduction of $13,000 as a bad debt.

Sec. 23 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 23, provides:

"In computing net income there shall be allowed as deductions: * * *

"(k) (1) Debts which become worthless within the taxable year."

The amendment was approved October 21, 1942, and by its terms was retroative so as to include the year 1941. Section 124(d), 26 U.S.C.A. Int.Rev.Code, § 23 note.

Mayper, the debtor, was a designer and a supervisor of construction of industrial buildings and apartment houses. In 1928, he built a residence at a cost of $50,000. It was encumbered by a first mortgage of $20,000 and a second mortgage of $12,500. Mayper obtained a loan of $13,000 from one Braloff. Mayper gave Braloff a personal bond and a note, bearing interest, each for the sum of $13,000, and a third mortgage upon the house to secure the note and bond. Meltzer gave Braloff a collateral bond for $13,000 to guarantee the loan. Mayper defaulted in the payment of interest, and Braloff made demand on Meltzer for payment of the indebtedness under the guarantee. After some negotiations, Braloff accepted $10,000 from Meltzer, in satisfaction of his bond, and assigned Mayper's bond, note, and mortgage to Meltzer. By reason of the financial depression in 1929 and subsequent years, and the decline in building operations, Mayper was not able to make any payments on the note. He gave several notes to Meltzer for accrued interest. Through his friendship with Mayper, and for the purpose of tiding Mayper over the financial depression, Meltzer made advances to Mayper in the years 1930, 1931, and 1932, aggregating $4,250. Mayper's financial condition deteriorated progressively. Meltzer made demands upon Mayper from time to time for payments on the indebtedness, without avail. In 1935, the first mortgagee foreclosed his mortgage. At the foreclosure sale, it sold for an amount sufficient only to pay the first mortgage indebtedness and arrears in taxes. Neither the holder of the second mortgage nor Meltzer obtained deficiency judgments against Mayper. From 1935 to 1941, Mayper's financial condition did not improve. By 1935, he was without property except wearing apparel and office furniture. From

---

[1] Hereinafter referred to as Meltzer.

1935 on, his liabilities were approximately $28,000 in excess of his assets.

The Tax Court found that the debt did not become worthless in the taxable year 1941.

Petitioners contend that it was not until the advent of the war, and the virtual suspension of the construction of buildings of a nondefense nature, and the resulting inability of Mayper to obtain employment, that the debt became worthless.

█ A finding of fact made by the Tax Court, if supported by substantial evidence, is conclusive.[2] We are of the opinion that the facts, with respect to Mayper's financial condition from 1935 to 1940, fully warranted the Tax Court in finding that the debt did not become worthless in 1941.

█ Since deductions are a matter of legislative grace,[3] we think there can be no doubt of the power of Congress to make the 1942 amendment retroactive so as to apply to the taxable year 1941.[4]

Affirmed.

L. HAND, Circuit Judge (dissenting).

I agree that we must accept the finding of the Tax Court that the debt did not become worthless in 1941; but that court did not find whether it became worthless before or after December 31, 1938. The amendment to § 23(k) (1) in 1942 was made retroactive to December 31, 1938—§ 23(k), § 124(d)—and that, I submit, meant that the deduction of debts becoming worthless before then was to be determined under the old law. If so, debts, although they had actually become worthless before December 31, 1938, were to be deducted in the year in which the creditor "ascertained" that they became worthless. We have ruled a number of times—last in Mayer Tank Manufacturing Co. v. Commissioner, 126 F.2d 588, 591—that the year in which a debt is "ascertained" to be worthless is that in which the creditor in fact "ascertained" it to be so, and not that in which he ought to have done so, or in which a reasonable man would have done so. Other circuits have held the contrary—e. g. Reading Co. v. Commissioner, 3 Cir., 132 F.2d 306, 309— but I assume that we should follow our own precedents. The Tax Court made no find-

ing whether the taxpayer first "ascertained" the debt to be worthless in 1941, although I believe that there was adequate basis for a finding that it was in that year. For the foregoing reasons I regard findings necessary upon the following questions: (1.) Did the debt become worthless before December 31, 1938? (2.) Did the taxpayer in fact "ascertain" before 1941 that it had become worthless?

I submit that this interpretation is the only one consistent with the purpose of the amendment, if, as I understand to have been the case, it was intended to relieve creditors. As the law was, they were in a difficult position, because they had to prove, not only that the debt had become worthless, but that the year in which they claimed the deduction was the first in which they had "ascertained" that it had become so; and the last in particular was often extremely troublesome. It is true that the present law imposes upon them the risk of learning when the debt does become worthless, but in that it does no more than in the case of other losses. My brothers are now deciding that, if a creditor failed to claim deduction for a debt which actually became worthless before 1939, he may never deduct it, although he was under no duty to "ascertain" its worthlessness in that year, the statute having assured him that he need not claim it until he in fact did "ascertain" it. The amendment therefore increased, instead of lightened, the burden of such taxpayers, and in effect took away their privilege altogether. True, creditors whose debts became worthless in 1939, 1940, 1941, were at their peril bound to claim the deduction for those years, and it might appear that they were as much shut out as those whose debts became worthless earlier; but this is untrue, for in 1942 such creditors still had time to claim a refund for those years (§ 169(a) (2) of the Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 322(b) (2). To confine the retroactivity of the amendment to debts becoming worthless after 1938, is, therefore, I submit, not only consistent with the text, but with the demands of justice.

Finally, I think that the question is open to us upon this appeal. I should suppose that a question of law emerges with enough distinctness from any questions of fact in

[2] Helvering, Commissioner v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751.

[3] Antietam Hotel Corporation v. Commissioner, 4 Cir., 123 F.2d 274, 278.

[4] Cittadini v. Commissioner, 4 Cir., 139 F.2d 29, 31; Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 75 L.Ed. 809.

which it is enmeshed, to require an answer; and that that question was also one of general applicability. Indeed, it would seem that our jurisdiction must extend so far, if we are to have any whatever.