Leopold Spingarn v. Commissioner.
Spingarn v. Commissioner
Docket No. 12830.
United States Tax Court
1948 Tax Ct. Memo LEXIS 136; 7 T.C.M. (CCH) 498; T.C.M. (RIA) 48129; July 16, 1948
*136 Deduction of a bad debt alleged to have become worthless in 1943 disallowed for failure of proof. Richard W. Wilson, Esq., 74 Trinity Place, New York, N. Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $20,830.76 in the petitioner's income tax liability for the year 1943. The petitioner claimed an over-payment of $23,719.02 in his income taxes for that year. The sole issue now in controversy is whether or not the petitioner is entitled to the deduction of $432,669.22 as a worthless debt under the provisions of section 23 (k) (1) of the Internal Revenue Code. A second issue relating to the realization of a capital gain of $1,570 is not argued and is considered abandoned. Findings of Fact The petitioner resides in New York City, New York. He filed his income tax return for the taxable year with the collector of internal revenue for the third district of New York. The petitioner is a stock broker and has been engaged in that occupation for about thirty-seven years. From 1926 to 1937 he and Bancroft Smith were partners *137 conducting a general brokerage and securities business under the firm name of Leopold Spingarn & Company. The partnership agreement, dated September 10, 1926, provided that Smith would contribute the use of his membership in the New York Stock Exchange, valued at $150,000, and the petitioner would contribute $350,000 in cash as their respective shares in the partnership capital. The net profits and losses of the business were to be divided in the proportion of 60 per cent to the petitioner and 40 per cent to Smith. The contract also contained the following provision: "8. In the event of the death of either party hereto, or upon the expiration or other termination of this agreement of copartnership, the business of the copartnership shall be wound up and the assets and property thereof shall be sold and liquidated with all possible expedition, subject to the Constitution and rules of the New York Stock Exchange and the payment of the copartnership obligations, and such amounts as have been contributed to the capital by Leopold Spingarn as hereinbefore provided shall be returned to him to the extent remaining, and out of the surplus, if any, both parties shall receive the accrued interest *138 on their contributions to capital, and the balance remaining after said distribution of capital and interest thereon shall be divided between the parties in the following respective shares: forty per cent (40%) to Bancroft Smith and sixty per cent (60%) to Leopold Spingarn. In no event shall any allowance be made to either party for the name or good will of the copartnership." In addition to his activities as the petitioner's partner, Smith maintained on the firm books speculative accounts for himself. Such accounts had been transferred to the firm shortly after the partnership was formed. Bancroft Smith died on May 21, 1937. The petitioner was named the sole executor of his will and proceeded to administer his estate until it was wound up in 1943. Smith's will gave the petitioner broad powers and absolute discretion in the disposition of the decedent's property. At the time of his death, Smith owned some small real estate holdings in Brooklyn, his residence and other similar property. He also owned his Stock Exchange membership, hypothecated to secure a loan from Arthur Low; the securities pledged to secure a speculative account with the firm; a pearl stickpin and very little *139 cash. The appraisal of his estate made by the New York State Tax Commission on June 8, 1943, showed total assets of $197,929.29, consisting of securities worth $81,238.62, real estate valued at $22,418.14, "other miscellaneous property" $93,650, and two other small items aggregating $622.53. The appraisal showed indebtedness of $592,498.79 and funeral and administration expenses of $1,958.80, resulting in a deficit of $396,528.30. The real estate of the decedent was almost entirely covered by mortgages. The Stock Exchange membership was transferred to the estate of Arthur Low to liquidate Smith's debt to Low. Upon Smith's death the partnership was immediately liquidated and a new partnership formed by the petitioner and others. The Smith account was carried on as "Estate of Bancroft Smith, Liquidation Account." From time to time the petitioner sold some of the collateral (appraised at $81,238.62) and credited the proceeds to the liquidation account. The petitioner did not treat the securities as his own property. The collateral was finally sold in 1943 leaving a debit balance of $432,669.22 on the books of the firm. The petitioner also credited to the account all dividends, interest, *140 etc., from the Smith securities and debited the account with expenses incident to the sale of securities. Before Smith's death, the collateral to secure his speculative account was augmented by crediting profits from the firm's operation. At the time of his death the market value of the collateral was approximately $80,000. The balance sheet of the partnership of the petitioner and Smith as of May 31, 1937, is as follows: LEOPOLD SPINGARN & CO.
Balance Sheet - May 21, 1937
Assets
CURRENT
Cash in Banks
$ 83,794.03
Cash on Hand
500.00
Deposit Stock Clearing Corporations
15,000.00
Failed to Deliver
6,500.00
Stocks Borrowed
54,200.00
Commissions Receivable
582.50
$ 160,576.53
CUSTOMERS' ACCOUNTS, ETC.
Customers' Net Debit
$239,589.10
Accrued Interest on Customers' Accounts
1,102.50
S. B. Chapin & Co. Commodity Margin
2,450.00
243,141.60
ESTATE OF BANCROFT SMITH LIQUIDATION ACCOUNT
592,281.29
DUE FROM ESTATE OF BANCROFT SMITH
500.00
MISCELLANEOUS
Firm Investments
$ 1,771.00
Tax Stamps
1,842.08
Prepaid Expenses
1,259.44
$ 4,872.52
TOTAL ASSETS
$1,001,371.94
Liabilities and Capital
CURRENT
Bank Loans
$135,000.00
Commissions Payable
246.60
Failed to Receive
8,491.88
143,738.48
ESTATE OF BANCROFT SMITH LIQUIDATION A. L. ACCOUNT
127,427.16
MISCELLANEOUS
Suspense Interest
$ 5,974.74
S.E.C. Fees
11.56
Dividends Payable
137.00
6,123.30
LEOPOLD SPINGARN
724,083.00
TOTAL LIABILITIES AND CAPITAL
$1,001,371.94
*141 (Note: The item of $127,427.16 representing "ESTATE OF BANCROFT SMITH LIQUIDATION A. L. ACCOUNT" was a liability of Smith's and not of the partnership.) Upon the death of Smith the assets of the partnership were not sold but were transferred to the new partnership. Such assets included the debit balance of the Smith account. The account was carried on the ledger of the new firm under the heading "Leopold Spingarn in Liquidation." In reporting his gains and losses upon the sale of the Smith securities in 1939, 1940 and 1943, the petitioner included such transactions in his individual income tax returns. On November 21, 1946, he filed an amended return for the year 1943 to reflect a bad debt deduction of $432,669.22 based on the difference between the proceeds of the sale and the balance of the amount due to the partnership of the petitioner and Smith. Such returns were made on the advice of the petitioner's tax accountant and over his own objections. In his notice of deficiency the respondent appended the following "Explanation": "(a) It is held that as a result of certain security transactions, the details of which were furnished you under date of September 20, 1946, you *142 realized a long-term capital gain of $1,570.00 in the year 1943 instead of a long-term capital loss of $26,314.47 as reported. Accordingly, the difference of $27,884.47 has been added to your taxable income. It is held, further, that no deduction under section 23 (k) of the Internal Revenue Code is allowable in 1943 by reason of the aforementioned transactions." The letter of September 20, 1946, contains the following: "One Bancroft Smith died on 5/22/37. At the date of his death Bancroft Smith was indebted to taxpayer in the sum of $477,361.19. Against this debt taxpayer held as security various amounts of stocks and bonds (detailed in exhibit A) which had a market value of $79,802.09. Bancroft Smith died without leaving any assets other than the collateral in taxpayer's hands. Taxpayer was the executor of Bancroft Smith's Estate. Inasmuch as there existed no possibility of collecting from the estate, taxpayer at the time of Bancroft Smith's death appropriated the collateral to himself. In 1939 and in 1940 taxpayer sold part of the former Bancroft Smith securities and reported the gain or loss as the gain or loss on the sale of capital assets. All income *143 received by taxpayer on the former Bancroft Smith securities was included by taxpayer in his gross taxable income as dividends or interest. During 1943 taxpayer sold the remainder of the former Bancroft Smith securities and deducted a loss of $26,314.48 as disclosed in exhibit B. The basis of the securities sold was its fair market value at 5/22/37 apportioned to the debt of $477,361.19 as disclosed in exhibit A. The fair market value at 5/22/37 of the securities sold in 1943 was $11,182.50. * * *" Opinion VAN FOSSAN, Judge: The petitioner claims that he is entitled to a deduction of $432,669.22 as a debt which became worthless during 1943, as provided in section 23 (k) (1), Internal Revenue Code. The respondent contends that the deduction is not allowable because (1) the alleged debt was due to the partnership and not to the petitioner and (2) the debt became worthless in 1937. Although the facts of record are confused and often inconsistent, it is fair to conclude that upon Smith's death the petitioner assumed that inasmuch as he was the only surviving partner of Spingarn & Co. and because of the large debt due from Smith to the firm, the debt automatically *144 became his personal obligation. The petitioner was also the sole executor of Smith's will with almost unlimited powers and with no duty to act as a fiduciary except as might be required by law. He also paid certain charges against Smith's estate because he knew that the estate was insolvent. It is obvious that the petitioner dealt with the assets and liabilities of the Smith estate in a loose and haphazard manner. It is not clear whether he sold the hypothecated securities as executor or as the surviving member of the creditor partnership or even as an individual, although he disclaimed any personal ownership of them. The Smith account was carried on the books of the new firm until it was closed out in 1943. Thus the liability of Smith and his estate was credited continuously to some one other than the petitioner. There is a complete absence of evidence showing in what manner settlement of the item was made by the petitioner, whether as executor or with the new firm which had continued to carry it on its books. We note also that the petitioner ignored the requirements of paragraph eight of the partnership agreement with Smith. There is no evidence disclosing what portion of the firm's *145 assets representing the capital contributed by the petitioner was returned to him "to the extent remaining" (the partnership agreement) or what share the Smith estate was entitled to have in the increased capital or surplus appearing on the firm's books May 31, 1937. It is axiomatic that a taxpayer is not entitled to claim a deduction for a bad debt unless the debt is due to him and not to some one else. The petitioner has not sustained his burden of proving that the Smith debt was due to him and hence he is is not entitled to the deduction claimed. The respondent contends that in any event the debt allegedly due to the petitioner was worthless in 1937 and not in the taxable year of 1943. We are inclined to agree with him in this respect also. The petitioner argues that the debt was not and could not have been determined to be worthless until the final sale of all collateral security. The facts of record show clearly that no reasonable person would have considered the Smith debt or any part thereof, except as it was secured by collateral, collectible at the time of his death. Securities worth less than $80,000 were pledged to secure a debt of over $400,000. The decedent had no *146 other assets which could contribute to the payment of his debt to Spingarn & Co. We are convinced that the petitioner deferred the sale of the securities, not with the idea that the proceeds would render the account good but solely for the purpose of reducing the loss to the firm. In fact, he indicated that if he had not been able to sell them in 1943, he might have kept them much longer. He knew the market value of the securities in 1937. He cannot be permitted to hold collateral indefinitely and take a deduction as it suits his fancy when the debt in excess of the collateral was hopelessly bad in prior years. The petitioner argues strongly that the respondent has created a new issue by the contention in this brief that the debt was not due to the petitioner individually. We do not so construe the matter. The single issue is whether or not the petitioner is entitled to a deduction of a bad debt which, he alleges, became worthless in the taxable year of 1943. The record, a large part of which is composed of the petitioner's testimony and exhibits, amply supports our conclusion that he is not entitled to the deduction claimed. The respondent's original theory of disallowance is *147 immaterial. John I. Chipley, 25 B.T.A. 1103; Houston Lighting & Power Company, 34 B.T.A. 745; Standard Oil Company, 43 B.T.A. 973, affirmed 129 Fed. (2d) 363, and cases there cited. The correctness of his conclusion is the question at issue, not the reasons advanced in support thereof. Decision will be entered under Rule 50.