229 F.2d 627
 56-1 USTC P 9235
 Mortimer W. LOEWI and Lillian B. Loewi, Appellants,
v.
Raymond F. RYAN and Rea Forhan Pedrick, Administratrix of
William J. Pedrick, deceased, Appellees.
Mortimer W. LOEWI and Lillian B. Loewi, Appellants,
v.
Denis J. McMAHON, Appellee.
 Nos. 100, 101, Dockets 23707, 23708.
 United States Court of Appeals Second Circuit.
 Argued Nov. 17, 1955.
Decided Jan. 25, 1956.
 
 Willkie, Owen, Farr, Gallagher & Walton, Mark F. Hughes, Sandow Holman, H. Bartow Farr, Jr., New York City, for appellants.
 Arthur S. Ecker, Paul W. Williams, U.S. Atty. for the Southern Dist. of New York, New York City, for appellees.
 Before HAND, FRANK and MEDINA, Circuit Judges.
 HAND, Circuit Judge.
 
 
 1
 These are appeals in two actions tried together, and brought to recover income taxes erroneously collected. The result turns on whether the plaintiffs were entitled to the deduction of a 'nonbusiness debt' from their joint income tax for the year 1944; and, if they were, there was an excess deduction remaining after 1944, to which they were also entitled in 1945 and 1946. Two issues were raised: (1) whether the deduction made from the plaintiffs' joint income tax in 1944, was of a debt that had survived until that year; and (2) assuming that the debt was still in existence whether it had not become 'entirely worthless' before 1944, or if it had not, whether the plaintiffs were justified under the statute-- § 23(k)(4), Title 26 U.S.C.A.-- in postponing until 1944 the liquidation of collateral pledged to secure it, which left the remainder 'entirely worthless.' The evidence upon the first issue was contradictory, and concededly was not so preponderant that the judge should have directed a verdict in the defendants' favor: indeed, they do not say that it was. As to the second issue, which assumes that the debt still existed in 1944, the defendants do not dispute that the plaintiffs in 1944 had possession of property of substantial value that had been given as security for the debt, that they liquidated the security in that year; and that the debtor, at least as early as 1943 and probably for some years before, had no other assets with which to pay the debt. On these facts the defendants argue that the plaintiffs knew that the unsecured part of the debt-- by far the greater part-- was 'entirely worthless in 1943 or earlier, and that they forbore until 1944 to liquidate the security in order to take a larger deduction from their taxable joint income than they could have taken in 1943 or earlier. This the defendants say they had no privilege to do.
 
 
 2
 The first question is whether the passages in the charge that the plaintiffs challenge were directed to whether the debt survived transactions between the plaintiffs and the debtor before 1944. There can be no doubt we think that they were not so directed, but to the privilege of postponement. The colloquial charge was as follows:
 
 
 3
 'And in connection, as I say, with whether the debt became worthless in 1944 I charge you that the postponement of a bad debt deduction until the collateral is applied to the debt cannot be permitted solely because of the existence of this collateral. Such postponement must be shown to have been in good faith and bona fide for a taxpayer.
 
 
 4
 'Under all the circumstances you should satisfy yourselves that a claim of deduction for this debt in 1944 is consistent with reason, common sense and economic reality, and it was made in good faith and in all respects bona fide.'
 
 
 5
 The court did not define the phrases, 'good faith and bona fide for a taxpayer,' or 'consistent with reason, common sense and economic reality'; but, if there could be any doubt that this passage was meant to impose a condition upon the privilege of postponement, the requests that he refused lay it:
 
 
 6
 (1) 'the indebtedness has not become worthless within the meaning of the Internal Revenue Code unless and until all of the collateral securing the indebtedness has been completely realized upon and credited against the indebtedness.'
 
 
 7
 (2) 'if the jury found that the indebtedness was secured by collateral and that that collateral was not completely realized upon until the year 1944 the indebtedness could not have become worthless until that year.'
 
 
 8
 Again after the jury was recalled the judge said the following:
 
 
 9
 'If you find that in any year the Loewis held collateral and that collateral had value you are instructed that postponement of a bad debt deduction until the collateral is applied to the debt cannot be permitted solely because of the existence of that collateral. Such postponement must be shown to have been in good faith and bona fide for a taxpayer.'
 
 
 10
 This language could only have been on the hypothesis that the plaintiffs had not released the debt, and that they had continued to hold partial, though inadequate, security for it until 1944. The upshot of all these passages was therefore that, although they might postpone liquidation, it was only in the exercise of good faith, bona fides, reason, common sense or economic reality, whatever these terms should mean.
 
 
 11
 We cannot agree that this instruction was correct, or that a taxpayer is not privileged to liquidate his security for whatever purposes he thinks most profitable, among them the reduction of his taxes. It is so abundantly settled in decisions of the Supreme Court[1] that a taxpayer's motive is irrelevant in determining his liability that we need not cite the very numerous decisions of the lower courts. It has at times been said that Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, is at war with this doctrine, because it was only the purpose of the taxpayer to escape taxation that made futile the elaborate web of legal transactions which she wove in entire accord with the letter of the Act. We do not say that in that case the resulting legal transactions would not under the law of the state have created a corporation, or that the transfers and distributions would not have been recognized. Nevertheless, we hold that the Act is to be interpreted against its own background, and in deciding how far it adopted all legal transactions that the state law may have covered, it was proper to exclude those that had no other result than to evade taxation. The purpose of the Act was to exempt from tax only such legal transactions as arose out of an enterprise or venture that had some other authentic object of its own, and were neither alien and hostile to the raising of revenue, nor designed to effect no change in legal interests except to defeat a tax. The sale of property pledged, mortgaged or otherwise transferred to secure a debt does change the legal interest of the creditor, for it then determines how much of the debt shall become unsecured. It is the creditor's privilege to decide when that shall be done, and to cumber the privilege with such conditions as 'good faith,' 'common-sense' or 'economic reality' is to deny its full measure, quite aside from any uncertainty in the meaning of the words used.
 
 
 12
 In what we say we do not wish to be understood as meaning that a taxpayer's decision as to when his security has lost all value is subject to no review. No doubt he takes his chances that that may have happened before he acts; and we do not say that he will be protected if a reasonable person in his place would have thought that it had happened earlier. But, so long as he passes that test he is free to choose his time, whatever his purpose. No other conclusion is possible in the case of a secured debt under a regulation that limits any deduction whatever to occasions when the debt has become 'entirely worthless.' We are not in accord with the decision of the Tax Court in In re Leopold Spingarn, 7 T.C.M. 498, 501, 'that a taxpayer cannot be permitted to hold collateral indefinitely and take a deduction as it suits his fancy when the debt in excess of the collateral was hoplessly bad in prior years.' If that is desired, there must be some change in the Act or at least in the Regulations. Nor can we see any relevance in what we said in Scovill Manufacturing Co. v. Fitzpatrick, 2 Cir., 215 F.2d 567, 570, quoting from Belser v. Commissioner, 4 Cir., 174 F.2d 386, 390. The instruction which the judge there gave to the jury was to test whether any debt existed at all, and we need not reject it for that purpose; but it is inapplicable when an indisputable debt is secured by property of substantial value, as was the situation at bar.
 
 
 13
 The two decisions of the First Circuit, Old Colony Trust Associates v. Hassett, 150 F.2d 179; and Industrial Trust Co. v. Commissioner, 206 F.2d 229, do not indeed decide more than that the sales were liquidations of securities for still existing debts. Strictly, they are not, therefore, in the plaintiffs' favor, but some of the language in the opinions supports our decision that in the case of 'non-business debts' the existence of any security, not merely nominal in value, prevents the debts from being 'entirely worthless.'
 
 
 14
 Judgment reversed; cause remanded for further proceedings consistent with the foregoing.
 
 
 15
 FRANK, Circuit Judge (dissenting).
 
 
 16
 I agree that the judge's charge was somewhat confusing as to 'good faith' and the like. But I would remand for a new trial solely on the issue of the so-called good faith of the taxpayer in disposing of the collateral in the year that he seeks to take the bad-debt deduction. For I disagree with my colleagues in the following respect: I think that, so long as the taxpayer refrains from foreclosing on the collateral because of what he, in good faith, regards as valid business considerations (other than tax reduction), the debt is not to be deemed worthless; the taxpayer's subjective reactions, in that respect, are controlling. But I think that, at the moment when, in his mind, such business considerations cease to exist, he may not have the benefit, for tax purposes, of postponing such foreclosure to a later date. See Leopold Spingarn, 7 T.C.Mem. 498.
 
 
 17
 It begs the question to say that a taxpayer has a legal right to decrease, 'by means which the law permits,' the amount of what would otherwise be his taxes. The question here is whether the statute does permit a taxpayer to reduce his taxes by the means the taxpayer here employed. To put it differently, the question is whether Congress intended to allow the taxpayer to choose to foreclose on the collateral in the year which best served his purposes taxwise. I think that such was not the congressional purpose. Section 23(k) (4), taken together with Section 117(e)(1), constitutes a favor to the taxpayer, a boon, a grace,[1] and therefore those provisions should be strictly construed.[2] In Belser v. Commissioner, 4 Cir., 174 F.2d 386, 389, 390-- cited by this court with approval in Scovill Manufacturing Co. v. Fitzpatrick, 2 Cir., 215 F.2d 567-- the Fourth Circuit said that 'federal income tax statutes have been consistently drawn with the purpose of definitely fixing, so far as is practicable, the precise year in which a deduction or exemption must be claimed, not with the idea of leaving the taxpayer the choice of a taxable year, when his claim would inure to his greatest advantage.'
 
 
 18
 Pretty obviously, Congress, in dealing with this subject, was thinking of the ordinary case of an unsecured debt which becomes worthless; and clearly, with respect to such an unsecured debt, Congress did not intend that the taxpayer was to have the choice of the taxable year in which to deduct the loss, since the statute provides a definite period in which bad debts must be deducted, i.e., 'the taxable year' within which they become worthless. I agree with Judge HAND that, in the exceptional case where security has been given for the debt, the debt cannot be said to be worthless while the security has any value. But I do not think that Congress, in such an exceptional case, intended that where, aside from the collateral, the debt is wholly worthless, the year of deduction should be entirely indefinite, i.e., to be made definite solely according to the taxpayer's decisions as to what will aid him in reducing his tax. Section 23(k) clearly shows Congress, in general, intended to deny creditors such a choice, and there is no reason for making an exception in the case of a loan secured by collateral.
 
 
 19
 The following will serve to show where my colleagues' opinion may lead: Suppose a taxpayer makes a loan of $10,000, secured by a $500 government bond, and that, a few years later, the debtor becomes utterly unable to pay anything. The collateral, the $500 bond, will then be worth about as much as at any later time. Nevertheless, according to my colleagues, the taxpayer may continue to hold that bond and not dispose of it until 15 years later, at which time he can deduct the debt was wholly worthless.
 
 
 20
 This conclusion has startling consequences. For I understand that my colleagues agree that their ruling will necessarily apply also to the deduction of business bad debts secured by collateral. To be sure, business bad debts may be partially charged off by the taxpayer if he shows, to the satisfaction of the Commissioner, that part of the debt is not collectible.[3] But, where the taxpayer does not seek a partial charge-off and the debtor in a particular year becomes utterly and conclusively unable to pay anything, yet, according to my colleagues' decision, if the business bad debt is secured by collateral, it can be deducted in any year when the taxpayer, in his uncontrolled judgment and solely for a tax-saving purpose, chooses to dispose of the collateral. Such a result would offer an attractive means of tax evasion and would largely nullify Congress' express intent to deny the taxpayer the privilege of freely choosing the year in which to write off bad debts.
 
 
 21
 I would reverse and remand for a new trial solely on the issue of whether the taxpayer, in good faith, postponed disposition of the collateral until 1944 for what he deemed valid business reasons.
 
 
 
 [1]
 United States v. Isham, 17 Wall. 496, 506, 21 L.Ed. 728; Superior Oil Co. v. Mississippi, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504; Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 288, 66 S.Ct. 532, 90 L.Ed. 670
 
 
 [1]
 Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Meltzer v. Commissioner, 2 Cir., 154 F.2d 776, 777; Commercial Union Assurance Co. v. Commissioner, 2 Cir., 144 F.2d 994, 996; Johnston v. Commissioner, 2 Cir., 86 F.2d 732, 734, certiorari denied 301 U.S. 683, 57 S.Ct. 784, 81 L.Ed. 1341
 
 
 [2]
 Interstate Transit Lines v. Commissioner, supra; Deputy v. DuPont, supra; White v. United States, supra; New Colonial Ice Co. v. Helvering, supra; Mills Estate v. Commissioner, 2 Cir., 206 F.2d 244, 246; Omaha National Bank v. Commissioner, 8 Cir., 183 F.2d 899, 902; Portland Gasoline Co. v. Commissioner, 5 Cir., 181 F.2d 538, 540; Belser v. Commissioner, 4 Cir., 174 F.2d 386, 389
 
 
 [3]
 If part of a business bad debt has been deducted in a previous year, when the undeducted portion becomes wholly worthless, it must be charged off in the year it loses all value. Industrial Trust Co. v. Commissioner, 1 Cir., 206 F.2d 229, 233-234