## B. F. GOODRICH CO. v. UNITED STATES.

### No. 10035.

Circuit Court of Appeals, Ninth Circuit.

April 13, 1943.

F. C. Leslie, of Akron, Ohio, and Newlin & Ashburn, of Los Angeles, Cal. (Ray J. Coleman and C. Hudson B. Cox, both of Los Angeles, Cal., of counsel), for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, S. Dee Hanson and Warren F. Wattles, Sp. Assts. to the Atty. Gen., and Leo V. Silverstein, U.S. Atty., and E. H. Mitchell, Asst. U. S. Atty., all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the United States District Court in favor of the Government, upon a suit for recovery of additional manufacturer's excise tax assessed against and paid by appellant's predecessor in interest, Pacific Goodrich Rubber Company.

The action was tried upon a stipulation of facts and no dispute exists between the parties thereon. The Pacific Goodrich Rubber Company, a Delaware corporation (herein referred to, for convenience, as the "Pacific Company"), was at all times prior to its dissolution the wholly owned subsidiary of appellant, the B. F. Goodrich Company (herein referred to as the "Goodrich Company").

Pursuant to Section 16(a) of the Agricultural Adjustment Act[1] (Act May 12, 1933, Ch. 25, Title I, § 16, 48 Stat. 40, 7 U.S.C.A. § 616), Pacific Company was required to pay a tax upon the sale or disposition of any article processed wholly or in chief value from cotton, which it had on hand on August 1, 1933 (the date the processing tax on cotton went into effect by proclamation of the Secretary of Agri-

---

[1] Act May 12, 1933, Chapter 25, Title I, § 16(a), 7 U.S.C.A. § 616(a): "Upon the sale or other disposition of any article processed wholly or in chief value from any commodity with respect to which a processing tax is to be levied, that on the date the tax first takes effect or wholly terminates with respect to the commodity, is held for sale or other disposition (including articles in transit) by any person, there shall be made a tax adjustment as follows:

"(1) Whenever the processing tax first takes effect, there shall be levied, assessed, and collected a tax to be paid by such person equivalent to the amount of the processing tax which would be payable with respect to the commodity from which processed if the processing had occurred on such date. * * *

"(2) Whenever the processing tax is wholly terminated, (A) there shall be refunded or credited in the case of a person holding such stocks with respect to which a tax under this chapter has been paid, or (B) there shall be credited or abated in the case of a person holding such stocks with respect to which a tax under this chapter is payable, where such person is the processor liable for the payment of such tax, or (C) there shall be refunded or credited (but not before the tax has been paid) in the case of a person holding such stocks with respect to which a tax under this chapter is payable, where such person is not the processor liable for the payment of such tax, a sum in an amount equivalent to the processing tax which would have been payable with respect to the commodity from which processed if the processing had occurred on such date."

culture), in an amount equivalent to the tax which would have been paid on said cotton had it actually been processed after August 1, 1933, or approximately 4½ cents per pound. This tax amounted to $34,648.08.

During the period from August 1, 1933, through January 5, 1934, Pacific Company manufactured and sold tires which contained 705,806 pounds of processed cotton, which were in the company's inventory of August 1, 1933, and upon which the aforementioned Agricultural Adjustment Act tax had been paid. In computing the manufacturer's excise tax of 2¼ cents per pound of tires sold, imposed under § 602 of the 1932 Revenue Act, 26 U.S.C.A. Int.Rev. Code § 3400,[2] Pacific Company deducted from the weight of such tires the 705,806 pounds of processed cotton contained therein, on which it had paid the Agricultural Adjustment Act tax. In so doing, the Pacific Company relied on Section 92 of the Agricultural Adjustment Act, 7 U.S. C.A. § 609(a), which provided as follows: "Provided, That upon any article upon which a manufacturers' sales tax is levied under the authority of chapter 20 of Title 26 and which manufacturers' sales tax is computed on the basis of weight, such manufacturers' sales tax shall be computed on the basis of the weight of said finished article less the weight of the processed cotton contained therein on which a processing tax has been paid."

This computation of the manufacturers' excise tax, wherein deduction was taken for the weight of processed cotton, on which a tax had been paid under § 16(a) of the Agricultural Adjustment Act, was disallowed by the Collector, and on April 10, 1934, demand was made for an additional manufacturers' excise tax computed at the rate of 2¼ cents per pound on the 705,806 pounds of processed cotton contained in the tires which had been sold, amounting to $15,880.64, together with interest thereon in the sum of $569.74. Pacific Company paid this additional tax under protest.

Thereafter, and on June 30, 1934, Pacific Company executed an assignment to Goodrich Company of "all rights, claims and

choses in action of every nature and description which said Pacific Goodrich Rubber Company now has or shall have against any and all persons, firms or corporations, whether now due and payable or hereafter becoming due and payable including, but without limiting the generality of the foregoing, all bills or accounts receivable, outstanding contracts, insurance policies, bank accounts, stocks, bonds, or other interest in other firms, companies and/or businesses, also all cash, trade marks, trade names, patents, leases, merchandise, raw materials, supplies and equipment."

On July 6, 1934, the Board of Directors of Pacific Company met and adopted the following resolution:

"Resolved, that in the judgment of this Board of Directors it is advisable and most for the benefit of Pacific Goodrich Rubber Company that said corporation should be dissolved, and to that end and as required by law, that a meeting of the stockholders of said corporation be held at 500 South Main Street, Akron, Ohio, on the 6th day of July, 1934, at 2 ó'clock in the afternoon to take action upon this resolution, and

"Be it further resolved, that this Board of Directors does hereby ratify the action taken by the management of this corporation in transferring to and delivering over possession to The B. F. Goodrich Company of all of the assets of this corporation at the close of business on June 30, 1934, as a distribution in kind to the stockholders of all the assets of this corporation, and hereby recommends the ratification and approval by the stockholders of such action on the part of the management of the corporation, * * *".

In the minutes of the special stockholders' meeting called on July 6th, 1934, pursuant to the above resolution, the following appears:

"* * * the following resolution was unanimously adopted:

"Whereas, it is in the judgment of the stockholders of this corporation advisable and most for the benefit of the corporation that the corporation be dissolved, as recommended by resolution of its Board of Directors at a meeting duly called and held,

---

[2] Section 602, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code § 3400: "There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax at the following rates: "(1) Tires wholly or in part of rubber, 2¼ cents a pound on total weight (exclusive of metal rims or rim bases), to be determined under regulations prescribed by the Commissioner with the approval of the Secretary."

"Now, therefore, be it resolved that the proper officers of the corporation are hereby authorized and directed to obtain the execution by all of the stockholders of the corporation of a certification of dissolution by unanimous consent, and to file said certificate with the Secretary of State of the State of Delaware.

"The Chairman then announced that the corporation, acting through its officers, had transferred and delivered over to The B. F. Goodrich Company at the close of business on June 30, 1934, all of its assets in anticipation of the immediate dissolution of the company. Thereupon, on motion duly made and seconded, it was by unanimous vote

"Resolved that the stockholders of this corporation do hereby unanimously ratify and approve the action of the management of the corporation in transferring and delivering over to The B. F. Goodrich Company at the close of business on June 30, 1934, possession and control of all of the property and assets of the corporation as a distribution in kind of all of the assets of the corporation to its stockholders, all of its issued and outstanding stock being owned and/or controlled by said The B. F. Goodrich Company, and

"Be it further resolved that the President or a Vice President and the Secretary or an Assistant Secretary be and they hereby are authorized to execute in the name and on behalf of the corporation a good and sufficient deed of conveyance of all of the real estate of this corporation to The B. F. Goodrich Company, and to perform and execute all such further acts and assignments of bills and accounts receivable or other instruments as may be necessary or convenient to vest in The B. F. Goodrich Company full and complete title to all of the assets of this corporation."

Thereafter, and on August 24, 1934, another meeting of the Board of Directors of Pacific Company was held, at which the following resolution was adopted: "Resolved, that the Directors of this corporation do hereby unanimously ratify and approve the execution and delivery by the President and Secretary of the corporation of a certain assignment, dated June 30, 1934, transferring and setting over unto The B. F. Goodrich Company all rights, claims, and choses in action of every nature and description which the corporation now has or shall have against any and all persons, firms or corporations, whether now due and

payable or hereafter becoming due and payable * * *".

The certificate of dissolution of Pacific Company referred to in the foregoing resolutions, was filed in the office of the Delaware Secretary of State on December 21, 1934.

On August 14, 1935, after its dissolution, Pacific Company executed another assignment in favor of the Goodrich Company of "all claims, demands, choses in action or cause or causes of action of whatsoever kind and nature which it has or which may later accrue against all persons whomsoever, particularly its claim for refund of excise tax illegally paid to the United States Government from and after April 17, 1934, in the sum of $16,450.39, or any one sum finally found to be due, together with interest thereon".

On August 31, 1935, the Goodrich Company filed with the Collector of Internal Revenue a claim, and on April 21, 1936, it filed an amended claim, for refund of the taxes paid under protest as above set out, in each of which claims the following statement appears: "The B. F. Goodrich Company is entitled to the refund claimed herein for the reason that as of June 30, 1934, Pacific Goodrich Rubber Company, a Delaware corporation, sold, assigned, transferred and set over to the B. F. Goodrich Company all its rights, claims and choses in action of every nature and description which said Pacific Goodrich Company then had or might have against all persons, firms or corporations, whether then due and payable or to become due and payable thereafter."

Both the original and amended claims for refund were disallowed by the Commissioner on May 22, 1936, and on October 1, 1937, the Goodrich Company filed its original complaint in this action seeking judgment against the Government for the taxes allegedly overpaid. In this original complaint the assignment from the Pacific Company, dated June 30th, is set out at length, as are the claims filed by the Goodrich Company, with the Commissioner of Internal Revenue.

The Government demurred to the complaint upon the ground, inter alia, that "it does not appear from the bill of complaint * * * that a valid assignment has been made of the subject matter of the claim alleged in said bill by the Pacific Goodrich Rubber Company to complainant herein as required by Section 203, Title 31

U.S.C.A.; and that it affirmatively appears from the face of said bill of complaint as required by said Title 31, Section 203 U.S.C.A. * * *".

An amendment to the complaint was thereafter filed by the Goodrich Company, in which the assignment of August 14, 1935, was set out at length. The Government again demurred upon the same grounds as previously, and the court overruled the demurrer.

The Government filed an answer to the complaint, after which, by stipulation of the parties, the Goodrich Company filed its first amended complaint, in which, for the first time, it is alleged that it "* * * became by operation of law, pursuant to a distribution in kind to it by Pacific Goodrich Rubber Company, the sole owner of and vested with the title to all the rights, claims and choses in action of every nature and description, which the Pacific Goodrich Rubber Company then had against all persons, firms or corporations, whether then due and payable or to become due or payable."

The two assignments of June 30, 1934, and August 14, 1935, were set out at length "as physical evidence, affirmative proof and in confirmation of the above and foregoing" (the distribution in kind referred to in the paragraph of the amended complaint above quoted).

After trial the District Court found in favor of Goodrich Company on the merits of its action, but denied recovery on the ground that the assignment by which the Goodrich Company acquired title to the claim against the Government was void under the terms of § 3477, Revised Statutes, § 203, Title 31, U.S.C.A., which reads: "Assignments of claims void. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the

amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by * * * the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. * * *"

Admittedly, neither the assignment of June 30, 1934, nor the one of August 14, 1935, was executed with the formalities required by the above quoted section, but the Goodrich Company urges that it obtain title to the claim by operation of law by virtue of its sole ownership of the stock of Pacific Company and the dissolution of the latter company, and therefore that the code section is inapplicable. It is not necessary to decide the question since we believe appellant's claim for refund insufficient.

We have quoted from each of the claims filed by the Goodrich Company with the Commissioner; in each the Company asserted that it obtained the right to the refund by virtue of the assignment of June 30, 1934. We also pointed out that the Goodrich Company first contended that it obtained the right to the refund by operation of law in the first amended complaint, filed in February, 1940, just prior to the trial.

As noted by the Trial Judge, this resulted in a variance between the Goodrich Company's amended complaint and the claims for refund which had been filed with the Commissioner of Internal Revenue and rejected by him.

The trial court, however, took the position that this variance was "not occasioned by failure to comply with statutory requirements, but rather to the requirement of the Treasury regulations which state that claims for refund must set forth in detail each ground upon which they are made, and facts sufficient to apprise the Commissioner of the exact basis thereof".

Appellant contends that that part of the regulations applicable to the instant case[3] was not in effect at the time the

---

[3] Treasury Regulations 46. Article 71: "Credits and refunds.—* * *

"If any person overpays the tax due with one monthly return, he may either file a claim for refund on Form 843 or take credit for the overpayment against the tax due with any subsequent monthly return. In all cases (except those re-

amended claim was filed with the Commissioner. Regardless of the conditions imposed by the regulations, the taxpayer at the time in question could not advance one ground for refund in his claim to the Commissioner and another in his complaint to the District Court.

Revised Statutes § 3226, as amended by § 1103 of the Revenue Act of 1932,[4] requires that a claim for refund of taxes be duly filed. The provision appears in Title IX of the Act of 1932, 26 U.S.C.A. Int.Rev. Acts, p. 652, "Administrative and General Provisions," and therefore applies to all the preceding titles including Title IV, "Manufacturers' Excise Taxes."

The only logical conclusion that can be drawn from a consideration of § 3226 is that the claim for refund, which must be filed with the Commissioner as a condition precedent to maintaining a suit for recovery of a tax, is the identical claim upon which said suit must be based. As has already been pointed out, the claim originally propounded in appellant's amended claim of April, 1936, was dissimilar to that asserted in its first amended petition of February, 1940.

The conclusion is supported by the leading case of United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025. There, the court states in connection with § 1318 of the Revenue Act of 1921, 26 U.S.C.A. Int.Rev.Code § 3772, which was substantially the same as § 3226 under consideration herein: "The claim for refund which section 1318 makes prerequisite to suit, obviously relates to the claim which may be asserted by the suit. Hence, quite apart from the provisions of the Regulation, the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which the suit is brought, and refers to no facts upon which it may be founded." The court further remarked on page 273 of 283 U.S., page 378 of 51 S.Ct., 75 L.Ed. 1025: "Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and 'they mark the conditions of the claimant's right.'"

Upon the assumption that the variance was one which might be waived by the Commissioner, the trial court proceeded to find that "The Commissioner * * * appears to have rejected all claims for refund upon the broad ground that no right to refund existed in the taxpayer or the plaintiff under the Commissioner's interpretation of § 9(a) of the Agricultural Adjustment Act, and the failure of the United States to insist at any time upon the literal compliance with the regulations is tantamount to a waiver in that regard."

We express no opinion herein as to the correctness of the trial court's assumption that the variance was one which the Commissioner might waive,[5] for the reason that we find nothing in the record to support a finding that the Commissioner did waive the incompleteness of the claim as originally filed.

The Goodrich Company first urges as evidence of a waiver on the part of the Commissioner that the Commissioner rejected the claims on the merits. But the record discloses that this is only partially true.

The letter of rejection from the Commissioner reads:

"Reference is made to your claim for refund of $16,450.39, representing tax and interest paid by the Pacific Goodrich Rubber Company, 5400 E. 9th Street, Los

---

ferred to in section 621 (a), discussed under the preceding paragraphs of this article) where a person overpays tax, no credit or refund shall be allowed, whether in pursuance of a court decision or otherwise, unless the taxpayer files a sworn statement explaining satisfactorily the reason for claiming the credit or refund and establishing (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has either repaid the amount of the tax to the ultimate purchaser of the article or has secured the written consent of such ultimate purchaser to the allowance of the credit or refund. * * *"

[4] Revised Statutes § 3226, as amended by § 1103, Revenue Act of 1932, 26 U.S. C.A. Int.Rev.Code § 3772: "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, * * * until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof. * * *"

[5] But see United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U. S. 528, 58 S.Ct. 320, 82 L.Ed. 405.

Angeles, California, under the provisions of section 602 of the Revenue Act of 1932.

"It is stated that you are entitled to the refund of the above tax since the Pacific Goodrich Rubber Company sold, assigned, transferred and set over to you all its rights and claims. It is contended that the Pacific Goodrich Rubber Company erroneously paid manufacturers' excise tax in the amount claimed for the reason that floor tax was paid on the cotton content of the tires in question.

"There is on file in this office a claim filed by the Pacific Goodrich Rubber Company for refund of the above tax, based on the same contentions. This claim is therefore a duplicate claim and is rejected in full."

This obviously is not a rejection of Goodrich Company's claim on the merits, as urged by the Company and as indicated by the trial court.

■ The record discloses that there were claims for a refund of the same tax filed by the Pacific Company, and these claims were rejected on the merits by the Commissioner. But, of course, a rejection of claims filed by the person who actually paid the tax could not possibly be construed as a waiver of the lack of proper description of the assignment in the claim filed by Goodrich Company. There would be no occasion to go into the assignment at all, when considering the claim as one filed by the taxpayer. Indeed, it might well be argued that in rejecting the claim of Goodrich Company and considering the claim of Pacific Company, the Commissioner was taking the position that the assignment to Goodrich was invalid and that the right to refund, if any, still remained in the person who paid the tax.

■ It is also urged by Goodrich Company that the Government waived the form of the claim in the trial before the District Court. We do not agree. The Government demurred to the complaint on the very basis that the assignment was invalid and that the complaint therefore did not state a cause of action. The demurrer was overruled, and the Government answered the complaint. But in so answering, it did not lose its right to challenge the validity of the assignment, as disclosed by the claim.

■ In the amended complaint filed by the Goodrich Company it was alleged that the claim, which was set out in haec verba had been "duly filed" with the Commissioner. No denial of this allegation was contained in the Government's answer, and Goodrich Company urges that this resulted in the Government's waiving all matters concerning the form of the claim. In our opinion, there is no merit in this argument of the Goodrich Company, for the admission of the "due filing" of a claim set out in full in the complaint could not possibly include an admission concerning the sufficiency of the claim.

■ There having been no waiver, it is clear that the Government is within its rights in now asserting as a defense to the instant action that the claim presented to the Commissioner did not include the present position being taken by the Goodrich Company that it is entitled to the refund by virtue of an assignment by operation of law, as contracted with the assignment of June 30, 1934. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025.

Affirmed.