SCOVILL MANUFACTURING COM-
PANY, Plaintiff-Appellant,

v.

John J. FITZPATRICK, Collector of Internal Revenue for the District of Connecticut, Defendant-Appellee.

No. 206, Docket 22981.

United States Court of Appeals Second Circuit.

Argued April 12, 1954.

Decided Aug. 24, 1954.

568

John S. Murtha, Hartford, Conn. (William M. Cullina, Shepherd, Murtha & Merritt, Hartford, Conn., on the brief), for appellant.

George F. Lynch, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to the Atty. Gen., Washington, D. C., and Simon S. Cohen, U. S. Atty., Hartford, Conn., on the brief), for appellee.

Before CLARK, HINCKS, and HARLAN, Circuit Judges.

CLARK, Circuit Judge.

This case involves a claim for refund of excess profits taxes and interest paid by plaintiff, Scovill Manufacturing Company, for the taxable year 1944 when its asserted deduction of certain worthless debts under I.R.C. § 23(k) (1), 26 U.S. C., was disallowed. Plaintiff-taxpayer appeals from a judgment on the merits for the defendant-collector.

In 1929 Scovill, in the course of its business, acquired the entire outstanding stock of A. Schrader's Son, Inc., a New York manufacturing corporation. Schrader continued to operate as a subsidiary until in 1934 it transferred all of its operating assets to Scovill. Thereafter Schrader continued to exist as a corporation, but its business was carried on by the A. Schrader's Son Division of Scovill.

Prior to the 1929 change of ownership Schrader had entered into a pension trust agreement for the benefit of certain of its employees. The agreement obligated Schrader to make good any deficiencies in the principal or earnings of the fund as the claims of the beneficiaries came due. In November, 1935, after Schrader had given up its manufacturing operation, it terminated the trust agreement and assigned its interest in the trust fund to Scovill; and Scovill entered into a similar arrangement with the trustees, binding the employee-beneficiaries to continue faithful service to Scovill until their retirement. All this was done with the consent of the beneficiaries. On the date of this arrangement the book value of the trust's assets slightly exceeded its obligations, but their then market value was substantially less. Schrader's retained assets largely exceeded the obligations of the trust.

From time to time thereafter, as the trustees needed funds, Schrader, acting with funds loaned by Scovill, advanced money to the trust and received such repayments as were made. The advances were made by checks drawn by Scovill, and charged on Scovill's books to Schrader's account, appearing amid the other exchanges of cash between parent and subsidiary. No explanation is offered for this practice except the trial judge's plausible surmise that it was to preserve the historical origin of the contingent liability involved, in Scovill's otherwise solid conservative financial statement. At any rate, the practice ceased in 1940 when by appropriate entries on all three sets of books Schrader was eliminated from the picture, leaving an obligation from the trustees to Scovill of $353,899.-42.

Starting in 1934, Scovill had encouraged an orderly liquidation of the trust fund. By September, 1944, the trust obligation to its beneficiaries had been reduced to some $167,000. At that time Scovill proposed a large-scale financing program to prepare for postwar reconversion and expansion. In order to remove the contingent liability from its

financial statement it requested the trustees to accelerate the liquidation and terminate the trust. This was successfully accomplished; and in December, 1944, the trustees paid over their surplus to Scovill, closing out the trust and leaving an unpaid balance on the Scovill advances of $211,820.27.

In Scovill's tax return for that year it took a deduction under I.R.C. § 23(k) (1) of $211,820.27, representing the unpaid balance of its account with the then defunct trust. The Commissioner disallowed the deduction, and Scovill paid the resulting deficiency. Thereupon Scovill filed a claim for refund in which it stated:

"Pursuant to said agreement with the Trustees, Scovill, at the request of said Trustees, loaned to the Trustees the following sums, to wit:

| | | |
|---|---|---|
| October 23, 1940— | | $341,899.42 |
| December, | 1940 | 12,000.00 |
| 1941–1942 | | 95.25 |
| November, | 1944 | 158,000.00 |
| Total loans, | | $511,994.67" |

and continued with offsetting payments by the trustees of $55,000 from August, 1942, to January, 1944, and $245,174.40 in December, 1944, to total $300,174.40. This statement, however, appeared as the 16th out of 24 paragraphs of detailed facts, concluding with a claim for deduction alternatively under I.R.C. § 23(k) or (f) or (a) (1) (A). Upon disallowance of its claim Scovill brought this action.

■ After trial, the district court held that Scovill in its action had materially altered the basis for its demand by shifting from the claim that it had made a direct loan in 1940 to the contention that it had made a series of advances on Schrader's account culminating in purchase of the resulting obligation in 1940. Accordingly it held that the action must fail for variance from the claim for refund. We think the judge took an overly narrow view of the filed claim.

■ It is true that a claim for refund setting forth the material facts on which the claim is based is an essential condition precedent to this sort of action. I.R.C. § 3772; U.S.Treas.Reg. 111, § 29.-322–3, as amended T.D. 5325, 1944 Cum. Bull. 152. A claimant may not raise a wholly new factual basis for his claim at the later trial, Dascomb v. McCuen, 2 Cir., 73 F.2d 417, certiorari denied Chandler v. McCuen, 295 U.S. 737, 55 S.Ct. 649, 79 L.Ed. 1685; Samara v. United States, 2 Cir., 129 F.2d 594, certiorari denied 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549; cf. B. F. Goodrich Co. v. United States, 9 Cir., 135 F.2d 456, affirmed 321 U.S. 126, 64 S.Ct. 471, 88 L.Ed. 602; but also he may not shift the legal theory of his claim, United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Weagant v. Bowers, 2 Cir., 57 F.2d 679; Ronald Press Co. v. Shea, 2 Cir., 114 F.2d 453; Nemours Corp. v. United States, 3 Cir., 188 F.2d 745, certiorari denied 342 U.S. 834, 72 S.Ct. 50, 96 L.Ed. 631. Here, however, the basis of Scovill's claim has at all times been an obligation of the trustees owing to Scovill out of the latter's support of the Schrader pension fund and which arose in 1940 and became worthless in 1944. This is literally true, even though the claim for refund characterized as a "loan" a transaction which the parties later came to characterize as a "purchase of accounts receivable." Legally this latter may perhaps be a neater phrase; but from the Scovill end what happened in 1940 was a resettlement of existing cumulated loans to substitute the actual debtors, the trustees, for the nominal borrower, Schrader. One may hazard the guess that only lawyers would regard this as an investment in choses in action and that businessmen would more naturally think of it as an adjustment of loans to reflect realities.

■ We think that I.R.C. § 3772 and U.S.Treas.Reg. 111, § 29.322–3 go no further than to require the taxpayer to set forth facts sufficient to enable the Commissioner of Internal Revenue to make an intelligent administrative review of the claim. Here the 24 paragraphs of the claim showed the actual happenings with reasonable precision, and the gov-

ernment taxing authorities could not have been misled by the trivial mislabeling. And one glance at Scovill's or Schrader's accounts or the trustees' books as of October 23, 1940—an examination to which the filed claim inevitably led—would of course reveal the precise manner in which the indebtedness arose. Taxpayer has reasonably and substantially complied with the statute and regulations, and is entitled to a decision on the merits.

Because of his views as to variance, the trial judge never reached the merits of the main issue. He did, however, discuss the record in relation to alternate theories of recovery; moreover, most of the facts were stipulated, the rest being brought out in a plenary trial. Accordingly we think decision can be made without the necessity of a remand of the action.

The Collector raises several grounds for attack on the claim, but most are of little substance. For example, it is asserted that, since Schrader in 1940 had ample capital, Scovill must be deemed to have preserved its recourse against Schrader when purchasing these accounts; and the debt therefore never became worthless. Not only is there no evidence to support this thesis, but viewed against its background it is so inherently improbable as to require summary rejection.

The objection that the 1940 loans were not compelled by the 1935 agreement is equally frivolous. For whether or not the agreement required them, the fact remains that the money was provided and an enforceable claim against the trustees was created.

Of somewhat more substance is the argument that in 1940, since the trust was insolvent, Scovill could not reasonably have expected repayment. If this were so, the advance must be viewed as a gift. American Cigar Co. v. C. I. R., 2 Cir., 66 F.2d 425, certiorari denied 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601; W. F. Young, Inc. v. C. I. R., 1 Cir., 120 F.2d 159. The opinion below asserts, in another context, that Scovill knew in 1940 that pay-

ment was not probable. And the court refused a proposed contrary finding as not supported by evidence.

■ Perhaps because he was viewing the record in another context, that of the possibility of a deduction under I.R.C. § 23(f), the judge's approach does not appear directly responsive to the issue as it has now been framed before us. The test of the bona fides of a bad debt deduction must be "reasonableness, common sense and economic reality," Belser v. C. I. R., 4 Cir., 174 F.2d 386, 390, certiorari denied 338 U.S. 893, 70 S.Ct. 240, 94 L.Ed. 549; and it is of course clear that loans to an insolvent may support a deduction if repayment was reasonably expected. Redfield v. Eaton, D.C.Conn., 53 F.2d 693. Here the fact of loss is unquestionable; and unless the payments be held, contrary to practical realities, to be legally gifts under the principle above stated, the only objection to their deduction must be either that they were Schrader's or that the worthlessness of the debts occurred at an earlier period. The government's principal claim appears to be that the obligation was at all times Schrader's and that the loss was assumed by Scovill as a kind of tax evasion to obtain the benefit of a tax deduction at a propitious time. This view appears to have been accepted by the court, but seems at best only a surmise, at variance—so far as anything improper or questionable is concerned—with the clear fact that during the period Schrader was only a shell, a legal entity conducting no operations, but serving solely as a repository for Scovill funds. Hence the course of trial, where all the testimonial evidence of substance came from the plaintiff, was such as to mask the importance of proof as to the probable expectations as to the fund in 1940. But for this it seems hardly doubtful that plaintiff would have produced more witnesses to show as fact what Scovill actions suggest it believed to be fact.

But, be that as it may, the testimony, such as it was, was wholly one way, the defendant offering nothing to the contrary. Three witnesses testified as to

the outlook in 1935, and each held that despite the insolvency of the trust a reasonable investor at that time could look forward to ultimate repayment. And one of the witnesses, an expert in the investment field, specifically carried this conclusion down to encompass the year 1940.

Under the circumstances the desire to preserve employee loyalty and good will must be deemed adequate business justification for entering the 1935 agreement. And the 1940 transaction was nothing more than a substitution of the real for the fictitious debtor. In view of this, Scovill might perhaps be pardoned for failing rigorously to scrutinize the 1940 prospect of repayment. But to the support of its position, the only testimony on the point, as we have seen, holds that even in 1940 Scovill could reasonably expect ultimate repayment in full. Against this direct evidence there is nothing but the general outlook of war and depression and the hindsight fact that four years later Scovill decided to close out the trust. This is altogether too general to upset Scovill's affirmative case. By the same token Scovill was clearly correct in determining that the debt became worthless not in 1940, but in 1944. So far as the judge's findings are opposed to those views, we find ourselves compelled to disagree and to hold them erroneous under the test stated in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

A considerable part of the final sum claimed as deductible was made up of the $158,000 advanced in November, 1944, to facilitate immediate liquidation of the trust with the trustees and the various beneficiaries. This late advance under the then known circumstances can hardly be considered a loan which became a bad debt. But on the basis we have accepted of Scovill's interest in securing the final termination of this obligation, it is properly a business expense and deductible, as alternatively claimed, under I.R.C. § 23(a) (1) (A). The district court did not accept this view because of its conclusion adverted to above that

Schrader was independently responsible and this was mere manipulation on Scovill's part. As we have pointed out, however, Schrader was a mere shell, and the actual party in interest was Scovill. As such Scovill was justified in making the advance.

 The issue of the case is essentially whether Scovill attempted to purchase a tax loss or entered a bona fide business transaction culminating in a bad debt and business expense. Examination of the record convinces that Scovill has amply carried its burden of proving the latter case and is entitled to its deduction.

Reversed for entry of judgment for the plaintiff.