**Issac B. TIGRETT, III, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 03–2659MI/V.**

United States District Court, W.D. Tennessee, Western Division.

Nov. 17, 2004.

Cannon F. Allen, Armstrong Allen, PLLC, Memphis, TN.

Lloyd De Vos, Hill Betts & Nash, LLP, New York City.

Ivan C. Dale, U.S. Department of Justice, Washington, DC.

R. Scott Clarke, U.S. Department of Justice, Washington, DC.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCCALLA, District Judge.

Before the Court are the parties' cross-motions for summary judgment. Plaintiff filed a motion for summary judgment on June 9, 2004. Defendant responded in opposition on July 8, 2004. On June 10, 2004, Defendant filed its own motion for summary judgment. Plaintiff filed a response in opposition on July 12, 2004. Defendant served a reply which was received by the Court on July 30, 2004. Plaintiff responded to Defendant's reply brief with a sur reply brief received on September 21, 2004.

## I. Background

By this action, Plaintiff seeks a refund for his 1997 taxes arising from a loss in 1997 and carrying back from 1997 to 1994, 1995, and 1996. Plaintiff timely filed tax returns for the years 1994, 1995, 1996, and 1997. Plaintiff timely filed amended tax returns for 1994, 1995, 1996, and 1997 on November 17, 2000. The amended returns claimed a loss for the year 1997 and carried back to reduce Plaintiff's tax liability for 1994, 1995, and 1996. While the Internal Revenue Service issued a refund for the year 1998 based on a carryforward of the 1997 loss, the Internal Revenue Service took no action regarding Plaintiff's 1994, 1995, 1996, and 1997 tax refund claims for more than a year after the refund claims were filed. Because the Internal Revenue Service declined to enter an agreement tolling the limitations period provided by the Internal Revenue Code, Plaintiff filed this suit to preserve his rights. Plaintiff exhausted all administrative remedies available to him prior to filing this suit.

Plaintiff is in the business of originating and developing concept restaurants and entertainment venues. Between 1990 and 1992, Plaintiff conceived of, developed, promoted and financed the House of Blues, a restaurant and entertainment venue. In 1992, Plaintiff became the chief executive officer of HOB Entertainment, Inc. ("HOB"), the corporation formed to develop the House of Blues concept.

In early 1996, HOB was afforded the opportunity to open a temporary House of Blues venue in Centennial Park in Atlanta, Georgia during the 1996 Olympic games. At that time, Plaintiff owned approximately 11.9% of the outstanding shares of HOB and his investment of $2,000,000 was less than 10% of its capital. Plaintiff was the Chairman of the Board of Directors of HOB, but did not own a controlling interest in HOB. Plaintiff's employment as Chairman and Chief Executive Officer of HOB was pursuant to an employment contract. According to Plaintiff, his employment with HOB was predicated upon his continued success in developing and promoting the House of Blues concept.

Because some of the members of the Board of Directors of HOB were concerned that the proposed Atlanta venue might not be successful, Plaintiff, along with board members, Mr. Ackroyd and Mr. Goldsbury, agreed to indemnify HOB for losses relating to the proposed Atlanta venue.[1] Plaintiff received no additional

---

1. The parties dispute the actual amount up to which Plaintiff agreed to indemnify HOB. The

shares, stock options, or any other type of security in exchange for this indemnification. Thereafter, HOB resolved to advance up to $7,000,000 in connection with the House of Blues Atlanta venture and established a subsidiary company, House of Blues Atlanta, Inc. ("HOB Atlanta"), to operate the temporary venue in Atlanta. HOB provided all of the capital used by HOB Atlanta in operating the temporary venue. HOB anticipated that the funds used for the temporary venue in Atlanta would be repaid from either the profits resulting from the venue or via the indemnification agreement.

The temporary venue was set up to operate during the Atlanta Olympic Games, but was closed for four and one-half days following the explosion of a bomb in Centennial Park. Ultimately, the accountants for HOB determined that HOB lost more than $10,000,000 from the operation of the temporary Atlanta venue. On October 23, 1996, the HOB Board of Directors requested that Plaintiff honor his agreement to indemnify HOB for such losses. In order to raise $5,000,000 to honor his indemnity agreement, Plaintiff pledged his free shareholdings and options in HOB to Parkway Hotel Corporation in exchange for a loan in such amount. The share certificates and option agreements were placed in trust at First Union Bank. The documents for the loan were drawn up and dated December 31, 1996. The loan closed in January of 1997 at which time Plaintiff paid HOB $5,000,000.

Plaintiff was terminated as Chief Executive Officer of HOB by October of 1997 and he continues to own the HOB shares and options that were pledged to Parkway Hotel Corporation. The accountants who prepared Plaintiff's original Federal income tax returns for 1997 mistakenly reflected that these interests had been sold. This mistake was later discovered and the amended returns at issue were filed.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence

---

United States contends that Plaintiff agreed to indemnify HOB up to $3,000,000 as indicated by the Minutes of the Special Meeting of the Board of Directors dated May 29, 1996.

Plaintiff contends that he agreed to indemnify HOB up to $5,000,000 as indicated by Plaintiff's affidavit and the Contribution Agreement dated November 25, 1996.

and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis

Plaintiff claims that he is entitled to a deduction because the $5,000,000 at issue represents a business bad debt under the Internal Revenue Code, 26 U.S.C § 166. In the alternative, Plaintiff asserts that even if he is not entitled to a deduction under § 166, he is nonetheless entitled to a deduction under § 162 as an ordinary and necessary business expense or under § 165 as a loss incurred in operating a trade or business or in conducting a transaction for profit. Defendant contends that Plaintiff is not entitled to a refund under § 166 and that Plaintiff fails to qualify for a refund under either § 162 or § 165. In addition, Defendant contends that Plaintiff is precluded from arguing that he may receive a refund under either § 162 or § 165 because he failed to raise these arguments at the administrative level. The Court will address each of the parties' disputes in turn.

### A. 26 U.S.C. § 166

■ Under 26 U.S.C. § 166(a)(1), debts that become worthless during a taxable year may be deducted in that year. To establish a claim for a deduction under § 166, a plaintiff must show: "(1) a valid debtor-creditor relationship or a bona fide debt (2) a debt created or acquired in connection with a trade or business, (3) the amount of the debt, (4) the worthlessness of the debt, and (5) the year in which the debt became worthless." *Davis v. Comm'r of Internal Revenue,* 866 F.2d 852, 859 (6th Cir.1989).

Plaintiff contends that he is entitled to a deduction under § 166. Defendant contends that Plaintiff is not entitled to such a deduction because he cannot prove the existence of a bona fide debt. In particular, Defendant contends that the underlying transaction represents a capital contribution rather than a loan. Defendant further contends that the debt does not bear a proximate relationship to Plaintiff's trade or business and that his dominant motivation in incurring the debt was investment related and not in furtherance of his pecuniary interest as an employee. The Court will address the merits of the parties' cross-motions for summary judgment based on whether a bona fide debt existed and the dominant motivation of Plaintiff in incurring the debt.

For the following reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

### 1. Bona Fide Debt

■ In order to obtain a deduction under § 166, a taxpayer must demonstrate that the underlying transaction gave rise to a bona fide debt. Plaintiff contends that a bona fide debt arose from the underlying transaction because the advance from HOB to HOB Atlanta was a loan indemnified by Plaintiff. Defendant contends that there is no bona fide debt because the advance represented a capital contribution and, therefore, the indemnification agreement was not valid.

■ Because a capital contribution is not considered debt for the purposes of § 166, a taxpayer must prove that an advance to a corporation constitutes a true loan and not a contribution to capital. *Roth Steel Tube Co. v. Comm'r of Internal Revenue,* 800 F.2d 625, 629 (6th Cir.1986); *Smith v. Comm'r of Internal Revenue,* 370 F.2d 178, 180 (6th Cir.1966). However, "[a]dvances between a parent corporation and a subsidiary ... are subject to particular scrutiny 'because the control element suggests the opportunity to contrive a fic-

tional debt.'" *Roth Steel Tube Co.*, 800 F.2d at 630 (quoting *United States v. Uneco, Inc.*, 532 F.2d 1204, 1207 (8th Cir.1976) (internal citations omitted)).

■ Whether an advance to a corporation constitutes a capital contribution or a loan is a question of fact and turns on "whether the objective facts establish an intention to create an unconditional obligation to repay the advances." *Roth Steel Tube Co.*, 800 F.2d at 629–630. In *Roth Steel Tube Co.*, the Sixth Circuit Court of Appeals identified eleven factors to consider in making the capital contribution versus loan determination:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Roth Steel Tube Co.*, 800 F.2d at 630. In considering these factors, "no one factor is controlling or decisive, and the court must look to the particular circumstances of each case." *Id.*

Defendant contends that each of the *Roth Steel Tube Co.* factors supports treating the advance from HOB to HOB Atlanta as a capital contribution rather than a loan. Plaintiff contends that certain factors such as the source of repayment, the fixed maturity date of the obligation, the security for the obligation, and the ability to obtain outside financing, support treating the advance as a loan. The parties dispute whether these four factors actually support considering the advance a capital contribution or a loan. Because the Court must weigh the evidence in order to determine whether the underlying transaction constituted a capital contribution or a loan, such a determination is not appropriate on summary judgment.

## 2. Dominant Motivation

■ To qualify for a business bad debt deduction, the taxpayer must establish that the debt was proximately related to the conduct of the taxpayer's trade or business. *United States v. Generes*, 405 U.S. 93, 103, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972). "[I]n determining whether a bad debt has a 'proximate' relation to the taxpayer's trade or business...the proper measure is that of dominant motivation" underlying the transaction. *Id.* Where a taxpayer is both an employee and shareholder, the taxpayer's "dominant motivation" may be either business-related or investment-related. *Litwin v. United States*, 983 F.2d 997, 999–1000 (10th Cir. 1993). A taxpayer may take a deduction for a bad debt only if his dominant motivation is business related. *Id.* at 1000. "[W]hether a bad debt may be properly characterized as deductible is necessarily an issue for the trier of fact." *Id.* (citing *Generes*, 405 U.S. at 104, 92 S.Ct. 827.)

The *Litwin* Court noted "three objective factors" upon which courts focus "in determining a taxpayer's dominant motivation: (1) the size of taxpayer's investment, (2) the size of taxpayer's after-tax salary, and (3) other sources of gross income available to the taxpayer." *Id.* The parties dispute whether the facts in this case, in conjunction with the *Litwin* factors, dictate a determination that Plaintiff's dominant motivation in indemnifying the advance from

HOB to HOB Atlanta was business or investment related. This dispute necessarily requires the Court to determine a question of fact and as such cannot be resolved on summary judgment.

### B. Plaintiff's Claim For A Deduction Under 26 U.S.C. § 162 or 26 U.S.C. § 165

Plaintiff contends that if he is not allowed a deduction under § 166 he should be afforded a deduction under either § 162 or § 165. Defendant contends that not only is Plaintiff barred from raising claims under these sections, but that such claims are not meritorious.

#### 1. Claim Variance

A plaintiff must exhaust all administrative remedies prior to bringing a civil claim for a tax refund. *Scovill Mfg. Co. v. Fitzpatrick*, 215 F.2d 567, 569 (2d Cir.1954) ("[A] claim for refund setting forth the material facts on which the claim is based is an essential condition precedent to this sort of action.") Once a taxpayer has asserted a claim to the Internal Revenue Service, he may neither raise a wholly new factual basis for a claim at trial nor may he shift the legal theory of his claim. *Scovill Mfg. Co.*, 215 F.2d at 569. "Where the claim for refund states general grounds for relief, an item raised in litigation, but not specifically mentioned in the claim will be permitted if the taxpayer adequately alerted the IRS to the fact that the item is a ground for refund." *First National Bank of Fayetteville, Arkansas v. United States*, 727 F.2d 741, 744 (8th Cir.1984). So long as the government had adequate notice of the nature of Plaintiff's claim, this Court has jurisdiction to hear the claim.

Having reviewed the record before the Court, the Court finds Defendant's argument that the Court does not have jurisdiction to hear Plaintiff's alternative claims for a refund under either § 162 or § 165

unavailing. Therefore, the Court retains jurisdiction over Plaintiff's claims for relief pursuant to 26 U.S.C §§ 162 and 165.

#### 2. 26 U.S.C. § 162 and 26 U.S.C. § 165

Having denied both parties' motions for summary judgment regarding Plaintiff's claim for a refund under 26 U.S.C. § 166, the Court finds that it is premature to address the merits of Plaintiff's alternative claims that he should be allowed a refund under either § 162 or § 165.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment. The Court also DENIES Defendant's Motion for Summary Judgment.