Ruby Smith **STAHL**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 92–67.

United States District Court
District of Columbia.

Jan. 3, 1969.

Sidney J. Silver, Washington, D. C., on behalf of plaintiff.

Eugene G. Sayre, and Myron C. Baum, Dept. of Justice, Washington, D. C., on behalf of defendant.

## OPINION

HOLTZOFF, District Judge.

This is an action against the United States for a refund of payment of income tax for 1963, which the plaintiff claims was erroneously assessed and should not have been paid.

The question involved is whether a deduction claimed by the taxpayer was properly or erroneously disallowed by the Internal Revenue Service. The salient facts are as follows. The plaintiff is a widow who has been a professional musician and a music teacher. She had accumulated certain securities in part as result of her savings and in part as an inheritance from her deceased husband. At the solicitation of a securities firm located in Washington, D. C., named Balough & Company, she turned over to Balough & Company, on April 12, 1962, securities having the market value of approximately $210,000. She delivered these securities to Balough & Company as a loan in order that Balough & Company might use them as part of their capital, in compliance with certain regulations of the Securities and Exchange Commission.

The principal features of the agreement are as follows. Paragraph 1 provided that Stahl, namely the plaintiff, "Hereby agrees to loan and to deliver to Balough certain securities", and then the securities are listed.

Paragraph 2 provided that Stahl agreed to subordinate to the claims of all present and future creditors of Balough her right to demand the return of the securities or receive payment for them.

Paragraph 7 of the agreement provided that:

"Balough agrees to return the securities to Stahl on May 12, 1963."

Paragraph 8 provided that:

"the securities loaned to Balough pursuant to this instrument may be used and dealt with by Balough as part of its capital and shall be subject to the risks of Balough's business."

Apparently the plaintiff was allured by paragraph 3 which provided that Balough was to pay one percent of the market value of the securities every three months as compensation for making the securities available to them.

The securities were never returned. Extension agreements were entered into from time to time. On October 31, 1963, Balough & Company sold the securities for $257,078.90. In 1964 Balough and Company filed a petition of bankruptcy and the bankruptcy proceeding is now pending in this district.

In her amended income tax return for the year 1963 the plaintiff claimed a loss of $87,146, which was based on the cost of the securities that had been sold. Counsel deducted from the claim the sum of $39,866, which was the expected recovery out of the bankruptcy proceeding and thus arrived at the amount of the claimed loss. The Internal Revenue Service disallowed the deduction on the theory that the loss was in the nature of a nonbusiness bad debt, and therefore came under the Capital Gains Provision.

The plaintiff, having paid the additional assessment, now sues for a refund. The position of the government is predicated on the proposition that the original transaction between the plaintiff and Balough & Company created a debtor-creditor relationship. If this major premise were accepted, the conclusion reached by the government would necessarily follow. The Court, however, disagrees with the major premise.

At this point it is appropriate to consider the statutes that are relevant to this case. Section 165 of the Internal Revenue Code, 26 U.S. Code § 165, provides in Subsection (a) that:

"There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise."

Subsection (c) reads in part as follows:

"Limitations on losses of Individuals —In the case of an individual, the deduction under subsection (a) shall be limited to—(1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business."

Section 166, entitled "Bad Debts", provides in effect that there shall be allowed as a deduction any debt which becomes worthless within a taxable year or if it becomes partially worthless then the deduction may be allowed not in excess of the part charged off within a taxable year.

Subsection (b) provides that the basis for determining the amount for such deduction shall be the adjusted basis provided in Section 1011 for determining the loss from the sale or other disposition of property. In other words, the deduction for bad debts is subject to the limitations of the Capital Gains Provision, and therefore is not as favorable to the taxpayer as the provisions for deductions for losses. Apparently it is the view of the government that this loss should be treated as a bad debt under Section 166, because a debtor and creditor relation was created between the taxpayer and Balough.

The Court disagrees. The Court is of the opinion that the original transaction between the taxpayer and Balough did not create a debtor and creditor relation, but was a bailment. It consisted of a loan of securities which were to be returned.

A debt necessarily involves an obligation to pay money and not an obligation to deliver property. The government argues that after the securities were sold by Balough the plaintiff's rights were merely to recover damages from Balough and therefore were a claim for money, and a debt. Again the Court disagrees. Every claim for breach of contract, whether it be a contract of bailment or any other contract, is a claim for money. It does not necessarily follow, however, that a claim for damages for breach of contract constitutes a bad debt if the claim is not paid. It constitutes a loss under Section 165.

This view was adopted by the Court of Appeals for the Third Circuit in Ansley v. Commissioner of Internal Revenue, 217 F.2d 252, which is on all fours with the case at bar, not only as to the principle involved but even as to the factual situation. In that case the taxpayer allowed securities loaned by him to be used as collateral for a bank loan made to a corporation in which he was interested. Eventually those securities were sold to satisfy the loan. The Court held that the taxpayer sustained a loss under the predecessor of Section 165, and not a bad debt.

Some of the statements contained in the opinion of the Court are pertinent and highly illuminating. At page 254 the Court stated:

"We hold, contrary to the Tax Court, that the taxpayer's $29,000 loss was a loss sustained as a result of a 'transaction entered into for profit' * * * and was not a 'non-business debt' loss * * *."

The Court continued:

"It is clear that the taxpayer sustained his loss because of his agreement to lend his bonds as security for the bank's loan to the corporation. At the time the bonds were loaned to the corporation, no debtor-creditor relationship was established between the taxpayer and the corporation or the bank, so that there was no debt owing to the taxpayer which could have become bad."

And again the Court said:

"On July 3, 1947, the bank sold his bonds to satisfy the corporation's note. It was at that time that a definite, identifiable loss was suffered. To say otherwise would be unrealistic, for the taxpayer was in a distinctly different financial situation after the sale. Before the sale he owned bonds worth $30,000; after the sale the bonds belonged to another. Because of the agreement and the loan of the bonds, the taxpayer, who expected to profit from the deal, found himself without the $30,000 worth of bonds.

"The loss was one incurred as the result of a transaction entered into for profit, and the taxpayer was entitled to a deduction under Section 23(e) (2), unless he was 'compensated' for his loss within the meaning of Section 23(e), for a loss can only be taken if 'not compensated for by insurance or otherwise' ".

The Court is of the opinion that this case clearly rules the present controversy. It is argued by able counsel for the government, however, that this case is to be deemed overruled *sub silentio* by the Supreme Court in Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144. The Court finds no inconsistency, however, between the two cases. Its view is that the contention that the Ansley case was overruled by the Putnam case is not well founded. In the Putnam case the nature of the transaction was entirely different both in fact and in principle from that involved in the case at bar.

In the Putnam case the taxpayer guaranteed the payment of certain debts of a corporation in which he was interested. A guarantee is a contract to pay money. If the person whose debt is guaranteed does not discharge it, and if the guarantee causes a loss, a bad debt eventuates. In the case at bar, however, we have a bailment of certain personal property with an agreement to return it. Such a transaction is entirely different from a guarantee of payment of certain obligations.

The Court reaches the conclusion, therefore, that the Internal Revenue Service was in error in its view that the claimed deduction should have been treated as a bad debt under Section 166. The Court is of the opinion that the taxpayer has a right to have it treated as a loss under Section 165 and therefore charge it off in its entirety as a deduction.

There has been argued at length during the trial the question whether, if the loss comes under Section 165, it should be treated as a loss incurred in a trade or business under Subsection (c) (1) or

as a loss incurred in any transaction entered into for profit though not connected with trade or business, under Subsection (c) (2). So far as this case is concerned, this problem is not involved. If the amount of loss is deductible under Section 165, it is immaterial for the purposes of the 1963 return whether it is deductible under (c) (1) or (c) (2). To be sure, the consequences to the taxpayer are somewhat different. In one instance any excess of loss not used in one year may be carried back to prior years, whereas in the other case this may not be done. The Court is informed however, that there is a case pending in the Tax Court involving the right of the taxpayer to carry back the excess of the loss to 1962 and 1961. For the Court to decide this question would be in effect a dictum and moreover would prejudge the matter that is properly before the Tax Court. This Court is of the opinion that it should not enter into that field in this case because that point is not involved.

In the light of the considerations heretofore discussed, the plaintiff is entitled to the refund on the theory that the deduction claimed should have been allowed. It has been stipulated that the amount of the refund would be $5,532.

Accordingly, judgment will be rendered for plaintiff for $5,532.

The Court may add these observations. Of course tax laws are purely statutory and sometimes arbitrary and do not involve equitable considerations so far as the Courts are concerned. Nevertheless, the result reached by the Court is in the interest of justice and equity. This taxpayer, an elderly widow was overreached and induced to surrender $200,000 worth of securities which constituted a competence, without any safeguard whatsoever, even with a grant of power to sell the securities. Apparently advantage was taken of a widow who was not cognizant of business affairs. It was a very reprehensible act on the part of Balough. The Court is of the opinion that justice is being done by

the proper application of the income tax laws.

This oral opinion will constitute the findings of fact and conclusions of law, and counsel will prepare and submit a proposed judgment.