**W. R. ALSOBROOK and Wells F. Alsobrook, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 77–1388.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1977.

Decided Dec. 14, 1977.

Richard A. Williams, Little Rock, Ark. (argued), for appellants; Williams, Selig, Overbey & Sayre, and Robert D. Cabe, Wright, Lindsey & Jennings, Little Rock, Ark., on briefs.

Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D.C. (argued), for appellee; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and James S. Maxwell, Attys., Washington, D.C., Wilbur H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

PER CURIAM.

This is a timely appeal from final judgment dismissing the complaint of W. R. Alsobrook and Wells F. Alsobrook[1] for claim for refund of 1969 income tax alleged to have been wrongfully assessed and paid. Jurisdiction of the trial court under 28 U.S.C. § 1346(a)(1) is established. The trial court's opinion setting out the facts, the issues and the basis of the decision is reported at 431 F.Supp. 1122 (E.D.Ark.1977). The sole issue raised by the taxpayers is that the trial court erred in denying appellants a business bad debt deduction under Section 166 of the Internal Revenue Code in 1969 in the amount of $171,538.85.[2]

This case was tried to the court without a jury upon stipulated facts, depositions and exhibits, all of which are fully discussed in the trial court's memorandum opinion. We will not prolong this opinion to set out the extensive factual background here.

The critical finding of the trial court is that taxpayers' dominant purpose in providing the bank with $1,045,000.00

1. Wells F. Alsobrook is a party to this action by reason of her status as a joint taxpayer.

2. In the trial court taxpayers also contended that they are entitled to deduction for ordinary and necessary business expenses pursuant to § 162 and for business losses pursuant to § 165. Such issues are not raised upon this appeal and apparently have been abandoned. Hence we give them no consideration.

was to replace assets found unacceptable by the bank examiners and the banking commissioner to keep the bank from being closed by the Arkansas Commissioner of Banking, and not to protect taxpayers' $10,000 to $12,000 yearly salary or to purchase the rejected assets of extremely doubtful value. A large portion of the rejected assets consisted of forged notes and mortgages of little if any value. The banking superintendent, during the special meeting of the directors on November 16, 1967, at all times insisted on a contribution to capital to the extent of the unacceptable assets as a condition to permitting the bank to remain open. The taxpayers' written agreement with the Commissioner includes:

(2) Therefore, to induce the Commissioner to refrain from immediately placing said bank in liquidation, Alsobrook agrees as follows:

(a) He will pay to said bank prior to its opening on November 17, 1967, in cash, the sum of $705,000.00; and this payment shall constitute a capital contribution to said bank and not a loan to the bank.

The agreement also provides that taxpayers will give an additional note for $500,000.00 to secure discharge by taxpayers of an obligation to make good the total capital impairment. Taxpayers and the directors made the required capital contribution and the bank remained open. Taxpayers were the owners of just over 50% of the bank stock. The matter of transferring the rejected assets to the contributing officers and directors was not discussed or agreed upon until several days later. The fact that the Commissioner, after the bank's capital status had been satisfactorily restored, consented to the salvage value of the rejected assets going to the contributors of the capital does not convert the capital contribution into a bad debt.

■ The contention that the payment was made to relieve the taxpayers from claims of negligence in the lending of the bank's money was not discussed at the time the capital contribution was made. In any event, payment for the compromise of negligence claims did not constitute a purchase of loans or create a transaction for which a business bad debt loss could be claimed.

■ We have carefully examined the record and are satisfied the court's findings on the issues before us upon appeal are supported by substantial evidence and that the trial court's decision is not induced by any erroneous view of the law. We affirm on the basis of Judge Van Sickle's well-reasoned reported opinion insofar as it determines that taxpayers are not entitled to the business bad debt deduction under § 166, which is the only issue raised by the appellants.

Affirmed.