**Hershel KRASNOW, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 78 Civ. 3939.**

United States District Court, S. D. New York.

March 9, 1981.

Lapatin, Lewis, Green, Kitzes & Blatteis, P. C., New York City, by Fred Dubitsky, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, by David M. Jones, Asst. U. S. Atty., R. Nicholas Gimbel, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

In this action, pursuant to 28 U.S.C. § 1346(a)(1), Hershel Krasnow seeks a refund of federal income taxes paid for the years ending December 31, 1968 and December 31, 1971. The Government has moved for partial summary judgment dismissing certain of plaintiff's claims. The motion is granted.

In mid-1970, Hershel Krasnow decided to invest in a small brokerage firm, the Kern Securities Corporation ("Kern Securities"), which had been founded by Krasnow's longtime acquaintance, Arthur M. Kern. On June 10, 1970, Krasnow entered into a series of investment and employment contracts with Kern Securities and certain of its officers. Krasnow agreed to purchase stock in the corporation and to make or arrange for subordinated loans to the firm. The apparent purpose of this agreement was to improve Kern Securities' capital situation. Pursuant to this agreement, Krasnow loaned a portfolio of securities to Arthur M. Kern, who in turn loaned them to Kern Securities. Krasnow waived any recourse on the loans against Kern Securities; repayment was guaranteed by three officers and stockholders of the corporation. Simultaneously, Krasnow became Chairman of Kern Securities' Executive Committee, as well as a Senior Vice-President and the Manager of its Underwriting and Syndication Department.

On July 15, 1970, an audit revealed that Kern Securities had been operating in violation of Rule 325 of the New York Stock Exchange ("NYSE"), which specifies capital requirements for member firms. On July 21, in an attempt to resolve Kern Securities' capital problems, the plaintiff signed a Memorandum of Understanding with Kern Securities, several of its officers, and the NYSE which included a promise that Hershel Krasnow would help Kern Securities obtain a loan from his wife to be used to improve the corporation's capital. The next day, Sylvia Krasnow loaned $90,000 in cash and 500 shares of preferred stock to Reuben Rose, who then loaned them to Kern Securities on a subordinated basis. Despite this loan, the corporation remained in violation of Rule 325, and in November 1970, Kern Securities terminated its operations as an exchange member and commenced liquidation of its assets.

Beginning in October 1970, Hershel and Sylvia Krasnow demanded repayment of their loans. In early 1971, some of the securities loaned by Hershel Krasnow and all of the securities and a portion of the cash loaned by Sylvia Krasnow were returned or repaid. No further repayments were made until 1976. In December 1972, Hershel Krasnow brought suit against Kern Securities and various individuals. On or about February 18, 1976, Rose and Kern Securities paid Krasnow $10,000, and in May 1977 the Krasnows settled or discontinued all of their remaining claims against Kern Securities and the individual defendants.

In 1974, Hershel Krasnow filed an administrative claim with the Internal Revenue Service for a refund of income taxes paid for the tax years 1968 and 1971. Krasnow asserted that he had incurred a business bad debt loss of $157,520 in 1971 and was entitled to claim an ordinary loss deduction for that year and a net operating loss carryback deduction for 1968. Krasnow had not claimed such a deduction on his tax returns for 1971. The examining agent disallowed this deduction, determining that the loss was non-business in nature and thus eligible only for short-term capital loss treatment, and that Krasnow had failed to establish that the debt became worthless in 1971. That decision was affirmed on administrative appeal, leading Krasnow to commence this suit for a refund. The government has moved for partial summary judgment on

three separate issues. No motion is made for judgment on plaintiff's claim that moneys he advanced to Kern Securities in his own name created a business or non-business debt that became wholly worthless in 1971; issues involved in this claim remain to be tried.

## I.  The Loan From Sylvia Krasnow

The Government's first ground for summary judgment is based on the loan from Sylvia Krasnow to Reuben Rose. The Government asserts that this loan cannot give rise to a business bad debt under section 166 of the Internal Revenue Code, which allows a taxpayer to deduct as an ordinary loss any business debt that becomes worthless in a given tax year. The Code defines a business debt as:

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

I.R.C. § 166(d)(2).

The plaintiff concedes that Sylvia Krasnow "was not engaged in any trade or business at any time pertinent to this action." Joint Trial Order Paragraph III(8). The Government contends that this fact precludes any debt owed to Sylvia Krasnow from being accorded bad business debt status under section 166; it takes the position that any connection between the loan from Sylvia Krasnow and Hershel Krasnow's business is irrelevant. When "the taxpayer making the loan that gives rise to a debt is not engaged in a trade or business," the Government argues, "she may not deduct that debt as a business debt no matter what relation that debt may have to the business of another." Government's Memorandum in Support of Its Motion for Summary Judgment at 5.

None of the cases cited by the Government conclusively establishes its position. Some articulate criteria for deciding when a given debt is for business purposes, but involve situations somewhat different than the facts of the present litigation. *See, e. g., United States v. Generes*, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972); *Harsha v. United States*, 590 F.2d 884 (10th Cir. 1979); *Hogue v. Commissioner*, 459 F.2d 932 (10th Cir. 1972). Others are more analogous, and stand for the proposition that, when a taxpayer makes a loan to a friend or family member, the loan cannot be said to have a business purpose unless it somehow serves a business purpose of the taxpayer. For example, in *Hunsaker v. Commissioner*, 615 F.2d 1253 (9th Cir. 1980), it was held that loans made by the taxpayer to aid his father's real estate business could not form the basis for a bad debt deduction when the taxpayer had failed to prove that the dominant motivation for the loans was to benefit his own business purpose. *See also United States v. Generes, supra* (loan to aid son-in-law); *Levin v. United States*, 597 F.2d 760 (Ct.Cl.1979) (loan to aid business friend). The case now before the Court involves facts that are arguably different from those in the cases discussed and cited. Here the central question, at least for purposes of the motion for summary judgment, is whether a loan made by a taxpayer's *wife* in order to aid a taxpayer's business may ever be attributed to the taxpayer.

The plaintiff claims, in effect, that his relationship with his spouse is such that her loans should be treated as his. He claims he will be able to prove that he directed his wife to make the loan to Rose, and that as a dutiful wife she agreed. He states that he will also prove that the immediate purpose of the loan was to benefit Kern Securities, and thus himself as an employee and investor, and that the financial condition of Kern Securities at the time of the loan makes it clear that Sylvia Krasnow could not have been making the loan for her own benefit. Hershel Krasnow concedes that Sylvia Krasnow would also have benefitted from the transaction, but claims that any benefit would be indirect, occurring solely because she was his wife. Plaintiff argues that these allegations raise an issue of material fact that should be decided by a jury.

The Supreme Court has held that a debt can be a business bad debt for purposes of section 166 only if the taxpayer's dominant motivation for creating the debt was to further his business interests. *United States v. Generes, supra,* 405 U.S. at 103, 92 S.Ct. at 833. Sylvia Krasnow cannot satisfy this requirement because she was not in a business. Hershel Krasnow's claim may well be an effort to circumvent this failure by arguing that he, in effect, made the loan. To allow a husband to make such an argument appears questionable both as a statutory matter and in terms of relevant policy considerations. The statute gives the deduction explicitly to the "taxpayer" for appropriate debts incurred by the "taxpayer." To permit plaintiff to attempt to prove that he is the individual who made the loan would give the statutory term "taxpayer" a very different potential meaning than that given by the IRS and the courts.

Plaintiff's attempt to treat his wife's loan as his own for tax purposes makes light of the fundamental legal responsibilities that the loan actually created. Hershel Krasnow was simply not a party to the loan. The loan did not expose him to any potential loss; and he was not entitled to demand its repayment. Hershel Krasnow's argument would also raise the question of the status of all funds in his wife's name. If he had such control over his wife, for example, the Government could well argue that, upon his death, all accounts in his wife's name should be taxed in his estate. The Government would not be permitted to make such an argument when all the legal requisites of ownership by Sylvia Krasnow are established. Similarly, Hershel Krasnow should not be permitted to make such an argument here. What plaintiff's argument proves, in fact, is that his wife's motivation in making the loan was non-business.

## II. *The Section 165 Deduction*

Plaintiff argues that even if the loans— both of Hershel and Sylvia Krasnow—are determined to have given rise to non-business debts for purposes of section 166, and

are thus deductible only as a short-term capital loss under that section, he should be entitled to treat them as ordinary losses under section 165 of the Code. That section allows a taxpayer to deduct "(1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business...." I.R.C. § 165(c)(1)–(2). The Government moves for summary judgment on this claim, arguing that the Court lacks subject matter jurisdiction because plaintiff never sought a refund based upon section 165 at the administrative level, and that the claim is meritless.

### A. *Jurisdiction*

Before a taxpayer may sue to recover federal income taxes, he must file a claim for a refund or credit with the IRS. 26 U.S.C. § 7422(a). Treasury Regulation § 301.6402–2(b) provides that "[n]o refund or credit will be allowed ... except upon one or more of the grounds set forth in a claim (before the agency) .... The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Plaintiff has never raised an administrative claim for a refund under section 165; in fact, his claim under section 165 was not a part of the original complaint in this action. The issue was first raised as one of the plaintiff's contentions in the parties' Joint Trial Order. (¶ V(3)). The Government argues that plaintiff should be barred from presenting this belated claim.

The courts have generally refused to consider claims not properly presented to the IRS. *See, e. g., Union Mutual Life Insurance Co. v. United States,* 570 F.2d 382, 393 (1st Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Scovill Manufacturing Co. v. Fitzpatrick,* 215 F.2d 567, 569 (2d Cir. 1954); *United States v. Championship Sports, Inc.,* 284 F.Supp. 501, 504 (S.D. N.Y.1968).; Strict compliance with the requirements of both the jurisdictional statute and the accompanying treasury regulations is needed for many of the same rea-

sons that underlie the requirement in other contexts that litigants exhaust administrative remedies before proceeding to federal court, including the need for agency efficiency and judicial economy. *See* generally 3 K. Davis, Administrative Law Treatise § 20.01 *et seq.* (1958 ed., 1965 Supp., 1970 Supp.); *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969).

Plaintiff contends that all of the facts necessary to decide the issue under section 165 were presented to the IRS in the context of his claim under section 166. While plaintiff fails to cite any cases, there is at least some support in the Court of Appeals for the Second Circuit for the proposition that a court may have jurisdiction of his new claim. In *Scovill Manufacturing Co. v. Fitzpatrick, supra*, 215 F.2d at 569, the Court stated that, when a taxpayer fails properly to present a claim for a refund to the IRS, "he may not raise a wholly new factual basis for his claim at a later trial." But it went on to hold that, where the taxpayer has set forth the facts underlying a claim with sufficient precision to allow the agency to make an intelligent determination of its merits, he should be permitted to present the claim in federal court and should not be precluded by "trivial mislabeling" of his claims. *Id.* at 570.

The plaintiff's failure in this case, however, goes considerably beyond trivial mislabeling. Plaintiff now claims a basis for recovery that is entirely different from that originally presented to the IRS. While consideration of this new claim would probably not necessitate the introduction of substantial new evidence, the IRS should not be required to anticipate all possible methods of tax treatment that might conceivably be available to a taxpayer. The Government seems correct, therefore, in arguing that this Court lacks subject matter jurisdiction of the section 165 claim.

### B. *Merits*

Even if there is subject matter jurisdiction of plaintiff's claim under section 165, the Government is entitled to summary judgment. The Supreme Court has held clear that "a loss attributable to the worthlessness of a debt shall be regarded as a bad debt loss, deductible as such or not at all." *Putnam v. Commissioner*, 352 U.S. 82, 88, 77 S.Ct. 175, 178, 1 L.Ed.2d 144 (1956). If the taxpayer fails to establish that a debt qualifies as a business bad debt under Section 166, he must be satisfied with treatment as a non-business bad debt under that same section and may not look to section 165 for an alternative means of treating his loss on the debt as an ordinary loss deduction. *Alsobrook v. United States*, 431 F.Supp. 1122 (E.D.Ark.), *aff'd*, 566 F.2d 628 (6th Cir. 1977).

Plaintiff's attempted reliance on *Stahl v. United States*, 441 F.2d 999 (D.C.Cir.1970), *aff'g* 294 F.Supp. 243 (D.D.C.1969), is unfounded. In *Stahl*, the taxpayer, a music teacher, turned certain securities over to a securities firm to be used by the firm to satisfy SEC capital requirements. The firm agreed to return to Mrs. Stahl the same securities at a certain future date, subject to all claims by the firm's creditors, present and future. While the securities were in the hands of the firm, Mrs. Stahl was to receive dividend and interest income.

Approximately one and one-half years after Mrs. Stahl turned over the securities, the firm sold them. The next year, it filed for bankruptcy. On her income tax return, Mrs. Stahl claimed an ordinary loss deduction for her expected loss on the unreturned securities. The IRS disallowed the claim, ruling that such a loss could not be recognized as a non-business bad debt under section 166. Mrs. Stahl appealed to the courts and prevailed; the agreement between Mrs. Stahl and the securities firm was held not to establish a debtor-creditor relationship, but rather a bailment. 441 F.2d at 1002.

In *Stahl*, the Court examined the relevant legislative history and Treasury Regulation and found that section 166 only applies to "bona fide debts." H.R.Rep.No.1337, 83d Cong., 2d Sess., A47 (1954); Treas.Reg. § 1.166–1(c). Such a debt is defined as one "based upon a valid and enforceable obligation to pay a fixed or determinable sum of

**1104**

money." *Id.* Because Mrs. Stahl's claim against the securities firm was subject to claims by the firm's creditors, she was not in possession of a bona fide debt and was instead involved in a "bailment transaction entered into for profit but with risk of loss." 441 F.2d at 1002.

 The facts of this case are different. Here, the taxpayer and his wife had a strict and unconditional right to repayment of both the cash and securities that they provided to benefit Kern Securities. Their rights were not subject to the claims of creditors or any other third parties. The relationship between the Krasnows and the recipients of their cash and securities was clearly that of debtor-creditor. Any loss on that debt must, therefore, be treated as a bad debt under section 166. *See, e. g., Lorch v. Commissioner,* 605 F.2d 657 (2d Cir. 1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980).

### III. *Partially Worthless Debt*

The Government also moves for partial summary judgment holding that plaintiff is not entitled to a deduction for a partially worthless debt in 1971. This issue will only arise if the plaintiff is unable to prove that the debts became wholly worthless in 1971, and seeks to deduct a portion of the debt that he alleges became worthless that year. Here, too, the Government's motion is granted.

Section 166(a)(2) of the Internal Revenue Code provides in the case of business bad debts:

> When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in any amount not in excess of the part charged off within the taxable year, as a deduction.

The Treasury Regulations that accompany this subsection require that the taxpayer satisfy the District Director of the IRS that a specific amount of a debt became worthless. If the Director is satisfied, a deduction is allowed to the extent the debt was charged-off during the taxable year. Treas.Reg. § 1.166–3(a)(2)(i)–(iii).

The Government sets forth several reasons sufficient to justify a grant of summary judgment on this issue. First, the taxpayer did not indicate on either his original tax return or in his subsequent administrative claim the portion of the debt that he alleges became worthless in 1971. He is not entitled to a deduction because he failed to charge off any amount as worthless for the given taxable year. *See* 5 J. Mertens, The Law of Federal Income Taxation § 30.22. Second, even to this date Krasnow has failed to indicate the amount of the debt he alleges became partially worthless in 1971. Under the circumstances, the IRS, in its discretion, may disallow a deduction of a partially worthless debt. The IRS should not be required to guess or estimate the amount of a debt that became worthless. *Roth Steel Tube Co. v. Commissioner,* 620 F.2d 1176 (6th Cir. 1980). Finally, plaintiff should be barred from claiming a partial deduction on grounds not presented at the administrative level. 26 U.S.C. § 7422(a); Treas.Reg. § 301.6404–2(b). *See* discussion *ante.* Indeed, even at this stage, plaintiff has not directly addressed the legal issues involved in this portion of the Government's motion.

The Government's motion for partial summary judgment on the issues sought is granted. Fed.R.Civ.P. 56(b).

So ordered.